## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

MIDWEST AUTO AUCTION, INC.

     Plaintiff,       Case No.

vs.              Hon.

CLARENCE MCNEAL, COUNTY OF WAYNE,
METRO AUCTION SERVICES, INC.,
and BOULEVARD & TRUMBULL TOWING, INC.,

     Defendants.

_____/

I.A.B. Attorneys At Law, PLLC
Felicia Duncan Brock (P63352)
*Attorneys for Plaintiff*
3319 Greenfield Road, #458
Dearborn, Michigan 48120
Duncan@iabattorneys.com

_____/

## COMPLAINT AND JURY DEMAND

There is no other pending or resolved civil action
arising out of the transaction or occurrence alleged
in the Complaint.

  Plaintiff MIDWEST AUTO AUCTION, INC., by and through its attorneys, I.A.B.

Attorneys at Law, PLLC, and per its Complaint, states as follows:

## PARTIES, JURISDICTION AND VENUE

1.  This action is for Unfair Trade Practices resulting in Michigan Antitrust Violations; Predatory Pricing; Tortious Interference with a Business Expectancy; and Civil Conspiracy.

2.  Plaintiff MIDWEST AUTO AUCTION INC. ("Midwest") is a privately owned company doing business under the laws of the State of Michigan in the County of Wayne.

3.  Plaintiff has been in the auction services business in Wayne County since 1952.

1

4.    Defendant CLARENCE MCNEAL ("McNeal") during the relevant time period of this Complaint, served as Purchasing Director for Defendant COUNTY OF WAYNE.

5.    Defendant COUNTY OF WAYNE ("County") is a body corporate and Charter County organized and operating under the laws of the State of Michigan in the County of Wayne.

6.    Defendant METRO AUCTION SERVICES INC. ("MAS") is a privately owned company doing business under the laws of the State of Michigan in the County of Wayne.

7.    Defendant MAS is a company affiliated and/or partnered with Defendant Boulevard & Trumbull Towing, Inc. ("B & T").

8.    Defendant B & T is a privately owned company doing business under the laws of the State of Michigan in the County of Wayne.

9.    The amount in controversy exceeds $75,000.

## FACTUAL ALLEGATIONS

10.    Wayne County has a "bidding" style process for county service contracts, also known as an Invitation for Bid ("IFB").

11.    Wayne County Charter requires that contracts be awarded to the lowest responsive and responsible bidder.

12.    Before awarding such contracts, Wayne County requires an IFB to be issued to the general public defining the services required; the qualifications of the parties; as well as, other requirements.

13.    Wayne County Purchasing receives and tabulates all formal bids for county contracts.

14.    On February 11, 2010, Defendant County issued an IFB for Vehicle and Equipment Auction Service, identified by Control No. 37-10-033.

15.    The original bid deadline was March 4, 2010 at 2:30 p.m.

16.    The Pre-Bid Question deadline was Tuesday, February 23, 2010 at 4:00 p.m.

17.    Written questions regarding the substance of the IFB were to be submitted to the purchasing contact, Conrado Renteria, via email.

18.    One IFB requirement was that the bidder's vehicle storage yard and business office must be located within fifteen (15) miles of 29900 Goddard Road, Bldg. 1, Romulus, Michigan.

19.    Each Bidder's location mileage was to be verified using MapQuest.

2

20.    In addition, the bidder had to possess a class D (Broker) license through the State of Michigan and had to have one similar-sized and type contract within the last two-years.

21.    To be considered similar type, the contract must include experience in consignment sales for public entities and include both office furnishings and equipment and vehicles and major equipment such as:   construction & heavy equipment (dozers, graders, end loaders, rollers, excavators, etc.), road maintenance equipment (dumps, pick-ups, tractors, mowers, etc.) and general vehicles & equipment (police cars, passenger cars, vans, etc.).

22.    On or about March 3, 2010, Addendum No. 1 to the IFB was issued addressing various questions potential bidders submitted to the County.

23.    Notably, the first question asked was "why is this restricted to companies within 15 miles of 29900 Goddard, Romulus?"

24.    The Defendant County responded that "[t]he 15 mile radius was set to minimize costs associated with transportation of items to the auctions."

25.    Addendum No. 1 also changed the bid deadline from the very next day, March 4, 2010 at 2:30 p.m., to March 16, 2010 at 2:30 p.m.

26.    On March 10, 2010, Addendum No. 2 was issued.

27.    In the second set of submitted Pre-Bid Questions, a potential bidder inquired whether there was a separate transportation cost category for heavy-equipment.

28.    The Defendant County responded that "only vehicles will be moved by the contractor, so this will not be an issue."

29.    Plaintiff Midwest timely submitted a bid in response to IFB 37-10-033.

30.    Defendant County has the submitted bids and all documents relative to IFB 37-10-033 in its possession.

31.    Plaintiff met all of the requirements of the IFB 37-10-033; and was therefore a responsive and responsible bidder in all aspects.

32.    Defendant B & T also submitted a bid for IFB 37-10-033.

33.    A subcontractor, Defendant Metro, was included in Defendant B & T's bid package.

34.    Some months after the IFB deadline date, Defendant County provided Plaintiff Midwest with an unofficial bid tabulation of all the bidders and their respective bids.

3

35.     On the unofficial bid tabulation, Defendant B & T was the lowest bidder at $35,250; and Plaintiff Midwest was the next lowest at $47,625.

36.     Subsequently, Defendant County issued an official bid tabulation.

37.     On the official bid tabulation, Defendant B & T was identified as being non-responsible because it's location exceeded the 15 mile limit requirement.

38.     Also worth noting, although disqualified, Defendant B & T's bid--$35,250.00—was more than 65% lower than the next lowest bidder.

39.     Plaintiff Midwest was now the second lowest bidder.

40.     On or about May 27, 2010, Defendant County determined that Martin's Towing was the successful bidder for the IFB 37-10-033.

41.     Upon further inspection, Plaintiff discovered that Defendant County incorrectly tabulated its bid.  An additional $12,375 was erroneously added to Plaintiff's bid; increasing Plaintiff's bid to $57,600.

42.     Had Defendant County correctly tabulated Plaintiff's bid, Plaintiff would have been the lowest bidding company as Defendant B & T was disqualified as non-responsible.

43.     Immediately upon noting Defendant County's error, Plaintiff Midwest made many unsuccessful attempts to contact Defendant County to object to and further discuss the discrepancy in bid amounts.

44.     In or about the beginning of June 2010, Plaintiff finally made telephone contact with Defendant McNeal.

45.     Defendant McNeal informed Plaintiff that Plaintiff's bid was re-calculated based on additional costs (tow cost of $140.00/tow plus $2.00/mile towed) included on Plaintiff's submitted bid package for vehicles over 12,000 pounds and in non-running condition.

46.     In fact, Plaintiff's actual bid was for $55.00 per tow.  The additional tow rate that Defendant Wayne County recalculated Plaintiff's bid was for the small percentage of vehicles over 12,000 pounds and in non-running condition.

47.     Defendant McNeal, as an agent of Defendant Wayne County, insisted that 95% of the auctioned vehicles would fall into the higher tow weight (12,000+ pound) category; and therefore the bid amount of $140.00/tow fee would stand.

48.     It was during this telephone call that Plaintiff Midwest became aware that the contract was awarded to the disqualified bidder, Defendant B & T.

49.     On or about July 12, 2010, Defendant County sent out a letter confirming that it re-evaluated the bids and that Defendant B & T would be the lowest responsive and responsible bidder.

50.     Suspiciously, even though the IFB required the bidder's storage yard and office to be within a 15 mile radius of the county's Goddard Road address; and was also specifically addressed in the potential bidders' pre-bid questions by potential bidders confirming the 15 mile radius; Defendant B & T was miraculously permitted to proceed as a responsive/responsible bidder on IFB 37-10-033.

51.     Defendant County knowingly, intentionally and purposely manipulated, through the acts of Defendant McNeal, Plaintiff Midwest's bid, strategically placing the bid behind the bid of Martin's Towing and that of Defendant B & T.

52.     On or about November 13, 2010, Defendant B & T conducted its first auction pursuant to IFB 37-10-033.

53.     At this auction, Defendant B & T's sub-contractor, Defendant Metro Auction Service conducted the auction.

54.     Notably, Defendant Metro Auction Services is co-located with Defendant Boulevard & Trumbull at 2411 Vinewood, Detroit, Michigan.

55.     At the November 2010 auction, Defendant B & T, through its sub-contractor Defendant Metro Auction Service, charged multiple fees in an effort to recoup its loses that resulted from submitting a significantly lower bid than the other bidders.

56.     Examples of Defendant B & T's charged auction fees include document fees, storage fees, gate fees, auction service fees and bidder registration fees.

57.     These additional fees violate the provisions in IFB 37-10-033.

58.     The fees charged at the November 2010 auction, if included in B & T's bid, would have greatly increased Defendant B & T's bid; and therefore would have placed B & T's bid more competitively in line with the other submitted bids.

59.     In addition to assessing undisclosed charges, Defendants B & T and Metro Auction Services committed the following violations at the November 2010 auction--lack of required handicapped portable toilet facilities available for public use; and inadequate food handling procedures when Defendant Metro was selling hot dogs and other concessions.

60.     The additional fees Defendant Metro Auction Services charged winning auction bidders, had they been disclosed on the bid, would have adjusted Defendant B & T's overall buyer premium percentage in excess of their winning 7% bid.

61.     Further, recouping costs in this manner is in direct violation of the IFB bid requirements which provide that the compensation stated on the bidder's price sheet is all encompassing of remuneration to which the contractor is entitled.

62.     Notably, Defendant Wayne County was fully aware of the aforementioned recouping of costs because numerous Defendant Wayne County employees were present at and witnessed the auctions.

63.     Despite the many violations on behalf of Defendants B & T and Metro Auction Services, Defendant County continues to utilize their services for fulfilling the contract.

## COUNT I
## RESTRAINT OF TRADE
## RESULTING IN SHERMAN ANTITRUST, 15 USC §§ 1, ET. SEQ.,
## VIOLATIONS AS TO DEFENDANT CLARENCE MCNEAL

64.     Plaintiff hereby incorporates Paragraphs 1-63 by reference as if fully restated herein.

65.     Defendant McNeal, during the relevant times of this lawsuit, was the Purchasing Director for Defendant Wayne County.

66.     Defendant McNeal and the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to assure that Defendant B & T was awarded the Wayne County equipment auctioning contract.

67.      Specifically, Defendant McNeal agreed with the other named Defendants to ignore Defendant B & T's obvious deficiencies; and to alter the calculation of Plaintiff's bid to assure that Defendant B & T was the lowest responsive bidder, among other things.

68.     More specifically, Defendant McNeal's decision to allow Defendant B & T to re-enter the bidding process after declaring Defendant B & T to be a non-responsible bidder is an arbitrary and capricious decision in violation of its own policies and guidelines and in furtherance of its agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

69.     That Defendant McNeal's unilateral decision to increase Plaintiff Midwest's bid amount was yet another arbitrary and capricious decision in violation of Defendant Wayne County's own policies and guidelines and in furtherance of his agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

70.     Upon information and belief, Defendant McNeal received a personal benefit from the other named Defendants herein to so contract, combine and/or conspire.

71.     Further, many of Defendant McNeal's actions were outside of the scope of his employment; and/or exceeded the scope of his authority as a Purchasing Director.

6

72.     Defendant McNeal's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning vehicles and equipment to the public within Wayne County.


73.     Defendant McNeal further restrained trade by aiding Defendant B & T in its effort to be the only towing company providing services within Wayne County; and to damage the citizens of Wayne County and the State of Michigan by charging exorbitant fees to attend the auctions and adding additional fees to the costs of any vehicle or equipment purchased.

74.     Once Defendant McNeal unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

75.     The above listed actions effectively constitute a restraint of trade against any competing company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder.

76.     The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and establish a monopoly of contracts to be awarded solely to B & T companies irrespective of whether or not they meet the minimum qualifications of the contracts.

77.     As a direct and proximate result of the aforesaid acts and activities of Defendant McNeal, Plaintiff has suffered damage including substantial economic injury, lost profits, and loss of business opportunities, among others.

## COUNT II
## UNFAIR TRADE PRACTICES
## RESULTING IN MICHIGAN ANTITRUST, MCL 445.771,
## ET. SEQ., VIOLATIONS AS TO DEFENDANT CLARENCE MCNEAL

78.     Plaintiff hereby incorporates Paragraphs 1-77 by reference as if fully restated herein.

79.     Defendant McNeal, during the relevant times of this lawsuit, was the Purchasing Director for Defendant Wayne County.

80.     Defendant McNeal is a person as defined by MCL 445.771(1)(a).

81.     Defendant B & T is a person as defined by MCL 445.771(1)(a).

82.     Defendant Metro is a person as defined by MCL 445.771(1)(a).

83.    Defendant McNeal and the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to assure that Defendant B & T was awarded the Wayne County equipment auctioning contract.

84.    Specifically, Defendant McNeal agreed with the other named Defendants to ignore Defendant B & T's obvious deficiencies; and to alter the calculation of Plaintiff's bid to assure that Defendant B & T was the lowest responsive/responsible bidder, among other things.

85.    Defendant McNeal and the other named Defendants herein participated in bid rigging and price fixing, among other things.

86.    More specifically, Defendant McNeal's decision to allow Defendant B & T to re-enter the bidding process after declaring Defendant B & T to be a non-responsible bidder is an arbitrary and capricious decision in violation of its own policies and guidelines and in furtherance of its agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

87.    That Defendant McNeal's unilateral decision to increase Plaintiff Midwest's bid amount was yet another arbitrary and capricious decision in violation of Defendant Wayne County's own policies and guidelines and in furtherance of his agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

88.    Upon information and belief, Defendant McNeal received a personal benefit from the other named Defendants herein to so contract, combine and/or conspire.

89.    Further, many of Defendant McNeal's actions were outside of the scope of his employment; and/or exceeded the scope of his authority as a Purchasing Director.

90.    Defendant McNeal's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning vehicles and equipment to the public within Wayne County.

91.    Defendant McNeal further restrained trade by aiding Defendant B & T in its effort to be the only towing company providing services within Wayne County; and to damage the citizens of Wayne County and the State of Michigan by charging exorbitant fees to attend the auctions and adding additional fees to the costs of any vehicle or equipment purchased.

92.    Once Defendant McNeal unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

93.    The above listed actions effectively constitute a restraint of trade against any competing company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder.

8

94.     The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and establish a monopoly of contracts to be awarded solely to B & T companies irrespective of whether or not they meet the minimum qualifications of the contracts.

95.     As a direct and proximate result of the aforesaid acts and activities of Defendant McNeal, Plaintiff has been caused to sustain damage including substantial economic injury, lost profits, and loss of business opportunities, exemplary damages, among others.

## COUNT III
### TORTIOUS INTERFERENCE WITH
### AN ADVANTAGEOUS BUSINESS RELATIONSHIP OR
### EXPECTANCY AS TO DEFENDANT CLARENCE MCNEAL

96.     Plaintiff hereby incorporates Paragraphs 1-95 by reference as if fully restated herein.

97.     Plaintiff and Defendant Wayne County had a valid business relationship and/or expectancy regarding providing auction services through IFB 37-10-033.

98.     Defendant McNeal was aware of the business relationship and/or expectancy between Plaintiff and Defendant Wayne County.

99.     Plaintiff was in a position to be awarded the auctioning contract under IFB 37-10-033 as the lowest responsive/responsible bidder because Defendant B & T was disqualified as being an unresponsible bidder due to the 15-mile location requirement and its failure to meet the experience requirement.

100.    Defendant McNeal intentionally and improperly interfered with the advantageous business relationship and/or expectancy between Plaintiff and Defendant Wayne County, when he agreed, combined, contracted and/or conspired to assure that Defendant B & T was the winning bidder on IFB 37-10-033; regardless of whether or not they qualified for the contract.

101.    Upon information and belief, Defendant McNeal received a personal benefit from the other named Defendants herein to so interfere.

102.    Further, many of Defendant McNeal's actions were outside of the scope of his employment; and/or exceeded the scope of his authority as a Purchasing Director.

103.    Defendant McNeal's intentional interference caused a termination of the business relationship and/or expectancy between Plaintiff and Defendant Wayne County as to IFB 37-10-033.

104.    As a result of Defendant McNeal's tortious interference with Plaintiff's business relationship and/or expectancy, Plaintiff has suffered damages including, but not limited to,

reliance damages, lost income, lost earning capacity, loss of business opportunities, exemplary damages and loss of professional reputation.

## COUNT IV
## CIVIL CONSPIRACY AS
## TO DEFENDANT CLARENCE MCNEAL

105.    Plaintiff hereby incorporates Paragraphs 1-104 by reference as if fully restated herein.

106.    Defendant McNeal and the other named Defendants herein illegally, maliciously and wrongfully conspired with one another to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means.

107.    Defendant McNeal conspired to tortiously interfere with an advantageous business relationship and/or expectancy, to rig a bid, to fix prices, and to restrain trade when he agreed with the other named Defendants to ignore Defendant B & T's obvious deficiencies; and to alter the calculation of Plaintiff's bid to assure that Defendant B & T was the lowest responsive/responsible bidder, among other things.

108.    Upon information and belief, Defendant McNeal received a personal benefit from the other named Defendants herein to so conspire.

109.    Further, many of Defendant McNeal's actions were outside of the scope of his employment; and/or exceeded the scope of his authority as a Purchasing Director.

110.    As a result of Defendant McNeal's acts and conspiracy with the other Defendants herein, Defendant McNeal caused and continues to cause Plaintiff damages including, but not limited to reliance damages, lost income, lost earning capacity, loss of business opportunities, exemplary damages and loss of professional reputation.

## COUNT V
## RESTRAINT OF TRADE
## RESULTING IN SHERMAN ANTITRUST, 15 USC §§ 1, ET. SEQ.,
## VIOLATIONS AS TO DEFENDANT COUNTY OF WAYNE

111.    Plaintiff hereby incorporates Paragraphs 1-110 by reference as if fully restated herein.

112.    Defendant Wayne County, by and through the actions of its officials, employees and/or agents, and along with the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to assure that Defendant B & T was awarded the Wayne County equipment auctioning contract.

113.    Specifically, Defendant Wayne County, by and through the actions of its officials, employees and/or agents, agreed with the other named Defendants to ignore Defendant B & T's

10

obvious deficiencies; and to alter the calculation of Plaintiff's bid to assure that Defendant B & T was the lowest responsive/responsible bidder, among other things.

114.    More specifically, Defendant Wayne County's decision to allow Defendant B & T to re-enter the bidding process after declaring Defendant B & T to be a non-responsible bidder is an arbitrary and capricious decision in violation of its own policies and guidelines and in furtherance of its agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

115.    That Defendant Wayne County's unilateral decision to increase Plaintiff Midwest's bid amount was yet another arbitrary and capricious decision in violation of Defendant Wayne County's own policies and guidelines and in furtherance of its agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

116.    Defendant Wayne County's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning vehicles and equipment to the public within Wayne County.

117.    Defendant Wayne County further restrained trade by aiding Defendant B & T in its effort to be the only towing company providing services within Wayne County; and to damage the citizens of Wayne County and the State of Michigan by charging exorbitant fees to attend the auctions and adding additional fees to the costs of any vehicle or equipment purchased.

118.    Once Defendant Wayne County unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

119.    The above listed actions effectively constitute a restraint of trade against any competing company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder.

120.    The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and establish a monopoly of contracts to be awarded solely to B & T companies irrespective of whether or not they meet the minimum qualifications of the contracts.

121.    As a direct and proximate result of the aforesaid acts and activities of Defendant Wayne County and/or its agents, Plaintiff has suffered damage including substantial economic injury, lost profits, loss of reputation and loss of business opportunities, among others.

122.    Defendant Wayne County is liable or vicariously liable for all damages.

## COUNT VI
### UNFAIR TRADE PRACTICES
### RESULTING IN MICHIGAN ANTITRUST, MCL 445.771,

11

**ET. SEQ., VIOLATIONS AS TO DEFENDANT COUNTY OF WAYNE**

123.    Plaintiff hereby incorporates Paragraphs 1-122 by reference as if fully restated herein.

124.    Defendant Wayne County is a person as defined by MCL 445.771(1)(a).

125.    Defendant B & T is a person as defined by MCL 445.771(1)(a).

126.    Defendant Metro is a person as defined by MCL 445.771(1)(a).

127.    Defendant Wayne County, through the acts of its officials, employees and agent, along with the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to assure that Defendant B & T was awarded the Wayne County equipment auctioning contract.

128.    Specifically, Defendant Wayne County agreed with the other named Defendants to ignore Defendant B & T's obvious deficiencies; and to alter the calculation of Plaintiff's bid to assure that Defendant B & T was the lowest responsive/responsible bidder, among other things.

129.    Defendant Wayne County and the other named Defendants herein participated in bid rigging and price fixing, among other things.

130.    More specifically, Defendant Wayne County's decision to allow Defendant B & T to re-enter the bidding process after declaring Defendant B & T to be a non-responsible bidder is an arbitrary and capricious decision in violation of its own policies and guidelines and in furtherance of its agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

131.    That Defendant Wayne County's unilateral decision to increase Plaintiff Midwest's bid amount was yet another arbitrary and capricious decision in violation of Defendant Wayne County's own policies and guidelines and in furtherance of his agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

132.    Defendant Wayne County's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning vehicles and equipment to the public within Wayne County.

133.    Defendant Wayne County further restrained trade by aiding Defendant B & T in its effort to be the only towing company providing services within Wayne County; and to damage the citizens of Wayne County and the State of Michigan by charging exorbitant fees to attend the auctions and adding additional fees to the costs of any vehicle or equipment purchased.

134.    Once Defendant Wayne County unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

12

135.    The above listed actions effectively constitute a restraint of trade against any competing company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder.

136.    The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and establish a monopoly of contracts to be awarded solely to B & T companies irrespective of whether or not they meet the minimum qualifications of the contracts.

137.    As a direct and proximate result of the aforesaid acts and activities of Defendant Wayne County and/or its agents, Plaintiff has suffered damage including substantial economic injury, lost profits, loss of reputation and loss of business opportunities, among others.

138.    Defendant Wayne County is liable or vicariously liable for all damages.

**COUNT VII**
**RESTRAINT OF TRADE**
**RESULTING IN SHERMAN ANTITRUST, 15 USC §§ 1, ET. SEQ.,**
**VIOLATIONS AS TO DEFENDANT METRO AUCTION SERVICES, INC.**

139.    Plaintiff hereby incorporates Paragraphs 1-138 by reference as if fully restated herein.

140.    Defendant MAS, during the relevant times of this lawsuit, was a subcontractor to Defendant B & T.

141.    As a subcontractor, Defendant MAS auctioned vehicles and equipment under the contract that is at issue herein.

142.    In addition to being a subcontractor, Defendant MAS was also an agent of Defendant B & T.

143.    Defendant MAS and the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to assure that Defendant B & T was awarded the Wayne County equipment auctioning contract.

144.    Specifically, Defendant MAS solicited to have Defendant McNeal to allow Defendant B & T to be awarded the Wayne County equipment auctioning contract, in spite of the fact that MAS and/or B & T did not meet the required qualifications.

145.    Defendant MAS's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning vehicles and equipment to the public within Wayne County.

146.    The awarding of Wayne County contracts to Defendant B & T, and its subcontractor MAS, is designed to eliminate or destroy any competitor and establish a monopoly of contracts

to be awarded solely to B & T companies irrespective of whether or not they meet the minimum qualifications of the contracts.

147.    As a direct and proximate result of the aforesaid acts and activities of Defendant MAS, Plaintiff has suffered damage including substantial economic injury, lost profits, and loss of business opportunities, among others.

**COUNT VIII**
**UNFAIR TRADE**
**PRACTICES RESULTING IN MICHIGAN**
**ANTITRUST, MCL 445.771, ET. SEQ., VIOLATIONS**
**AS TO DEFENDANT METRO AUCTION SERVICES, INC.**

148.    Plaintiff hereby incorporates Paragraphs 1-147 by reference as if fully restated herein.

149.    Defendant MAS, during the relevant times of this lawsuit, was a subcontractor to Defendant B & T.

150.    As a subcontractor, Defendant MAS auctioned vehicles and equipment under the contract that is at issue herein.

151.    In addition to being a subcontractor, Defendant MAS was also an agent of Defendant B & T.

152.    Defendant Wayne County is a person as defined by MCL 445.771(1)(a).

153.    Defendant B & T is a person as defined by MCL 445.771(1)(a).

154.    Defendant MAS is a person as defined by MCL 445.771(1)(a).

155.    Defendant MAS and the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to assure that Defendant B & T was awarded the Wayne County equipment auctioning contract.

156.    Specifically, upon information and belief, Defendant MAS solicited and requested that Defendant McNeal award Defendant B & T the at issue equipment auctioning contract, while ignoring Defendant B & T's obvious deficiencies, among other things.

157.    Defendant MAS and the other named Defendants herein participated in bid rigging and price fixing, among other things.

158.    Defendant MAS's solicitation of Defendant McNeal's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning vehicles and equipment to the public within Wayne County.

159.    Once Defendant MAS unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

160.    The above listed actions effectively constitute a restraint of trade against any competing company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder.

161.    The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and establish a monopoly of contracts to be awarded solely to B & T companies irrespective of whether or not they meet the minimum qualifications of the contracts.

162.    As a direct and proximate result of the aforesaid acts and activities of Defendant MAS, Plaintiff has been caused to sustain damage including substantial economic injury, lost profits, and loss of business opportunities, exemplary damages, among others.

## COUNT IX
## DEFENDANT METRO AUCTION
## SERVICES, INC. ENGAGED IN PREDATORY
## PRICING IN VIOLATION OF MICHIGAN ANTI-TRUST LAWS

163.    Plaintiff hereby incorporates Paragraphs 1-162 by reference as if fully restated herein.

164.    Defendant MAS, during the relevant times of this lawsuit, was a subcontractor to Defendant B & T.

165.    As a subcontractor, Defendant MAS auctioned vehicles and equipment under the contract that is at issue herein.

166.    In addition to being a subcontractor, Defendant MAS was also an agent of Defendant B & T.

167.    Defendant MAS represented that it was willing to be a subcontractor for Defendant B & T for a below-cost amount.

168.    Based in part on MAS's below-cost representation, B & T bid a below-cost amount for IFB 37-10-033.

169.    Defendant MAS knew its below-cost representation would help B & T's bid to be the lowest as the amount "bid" was significantly lower than the costs to perform the contract.

170.    Defendant Wayne County did deem Defendant B & T to be the "lowest bidder" and as such won the IFB 37-10-033 contract.

15

171.    In fact, Defendants MAS and B & T, at its first opportunity to auction Wayne County vehicles and equipment pursuant to the IFB, raised their prices considerably to be able to compensate for its below cost bid amount.

172.    Defendants MAS and B & T charged additional fees at the Wayne County auction held in November 2010, as well as others, to recapture their costs.

173.    These additional fees were in excess of the represented amount on the bid that Defendant Wayne County found to be the lowest.

174.    The additional fees at the November 2010 Wayne County auction allowed Defendants MAS and B & T to make a profit.

175.    Since Defendant B & T was the only approved contractor for this contract with Defendant Wayne County, any threat of a competitor has been effectively eliminated.

176.    As a result of Defendant MAS's predatory pricing, Defendant MAS caused and continues to cause Plaintiff and the citizens of Wayne County damages including, but not limited to substantial economic injury, lost profits, and loss of business opportunities, exemplary damages, among others.

## COUNT X
### TORTIOUS INTERFERENCE
### WITH AN ADVANTAGEOUS BUSINESS
### RELATIONSHIP OR EXPECTANCY AS TO
### DEFENDANT METRO AUCTION SERVICES, INC.

177.    Plaintiff hereby incorporates Paragraphs 1-176 by reference as if fully restated herein.

178.    Plaintiff and Defendant Wayne County had a valid business relationship and/or expectancy regarding providing auction services through IFB 37-10-033.

179.    Plaintiff was in a position to be awarded the contract as the lowest bidder under IFB 37-10-033 since Defendant B & T was disqualified as being an unresponsible/unresponsive bidder due to the 15-mile location requirement and its failure to meet the experience requirement.

180.    Defendant MAS, through its agents, was aware of the business relationship and/or expectancy between Plaintiff and Defendant Wayne County.

181.    Defendants MAS and B & T, through the acts of their agents, intentionally and improperly interfered with the advantageous business relationship and/or expectancy between Plaintiff and Defendant Wayne County, when they agreed, contracted and/or conspired to assure that Defendant B & T was winning bidder on IFB 37-10-033; regardless of whether or not they qualified for the contract.

182.    Defendants MAS's and B & T's, through the acts of its agents, intentional interference caused a termination of the business relationship and/or expectancy between Plaintiff and Defendant Wayne County.

183.    Defendants MAS and B & T's intentional interference included intentionally lowering its bid price to a below cost price in order to be the successful bidder and intentionally providing a false address of where the auctions were to be held in order to sway Defendant Wayne County in awarding the bid to Defendants MAS and B & T.

184.    As a result of its agent's actions, Defendant MAS is vicariously liable for any damages Plaintiff suffered and continues to suffer.

185.    As a result of Defendant MAS's tortious interference with Plaintiff's business relationship and/or expectancy, Plaintiff has suffered damages including, but not limited to reliance damages, lost income, lost earning capacity, loss of business opportunities, exemplary damages and loss of professional reputation.

## COUNT XI
## CIVIL CONSPIRACY AS TO
## DEFENDANT METRO AUCTION SERVICES, INC.

186.    Plaintiff hereby incorporates Paragraphs 1-185 by reference as if fully restated herein.

187.    Defendant MAS and the other named Defendants herein illegally, maliciously and wrongfully conspired with one another to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means.

188.    Defendant MAS conspired to tortiously interfere with an advantageous business relationship and/or expectancy; to rig a bid; to fix prices; and to restrain trade when it made a below-cost representation of the costs to fulfill the at issue contract, while knowing that the representation would help B & T's bid to be the lowest, among other things.

189.    As a result of Defendant MAS's acts and conspiracy with the other Defendants herein, Defendant MAS caused and continues to cause Plaintiff damages including, but not limited to, reliance damages, lost income, lost earning capacity, loss of business opportunities, exemplary damages and loss of professional reputation.

## COUNT XII
## RESTRAINT OF TRADE
## RESULTING IN SHERMAN ANTITRUST, 15 USC §§ 1, ET. SEQ.,
## VIOLATIONS AS TO DEFENDANT BOULEVARD & TRUMBULL TOWING, INC.

190.    Plaintiff hereby incorporates Paragraphs 1-189 by reference as if fully restated herein.

17

191.    Defendant B & T and the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to assure that Defendant B & T was awarded the Wayne County equipment auctioning contract.

192.    Specifically, Defendant B & T solicited Defendants McNeal and Wayne County to allow Defendant B & T to be awarded the Wayne County equipment auctioning contract, in spite of the fact that B & T did not meet the required qualifications.

193.    Moreover, Defendant B & T solicited Defendants McNeal and Wayne County to increase Plaintiff's bid in an arbitrary and capricious manner, in violation of Defendant Wayne County's own policies and guidelines; and in furtherance of its agreement, combination or conspiracy with the other named Defendants herein.

194.    Defendant B & T, through its agents and/or employees, froze out Plaintiff's bid and caused Defendant Wayne County to unilaterally and capriciously act to award the contract to Defendant B & T without regard to Plaintiff's qualifications and without regard to the correlating public interest.

195.    Defendant B & T's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning vehicles and equipment to the public within Wayne County.

196.    The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitor and establish a monopoly of contracts to be awarded solely to B & T companies irrespective of whether or not they meet the minimum qualifications of the contracts.

197.    In fact, the award of the Wayne County contract is detrimental to the public in that the public who are purchasing these Wayne County vehicles and equipment at auction are paying higher prices and the excessive fees that Defendant B & T tacked on to the purchase price.

198.    Defendant B & T and the other named Defendants herein knowingly acted in concert to restrain trade by sharing a common goal for Defendant B & T to become the next preferred vendor to Wayne County contracts to the detriment of the public and other competing vendors.

199.    These concerted actions were intentionally designed to restrain trade and commerce by placing Defendant B & T in another Wayne County contract by effectively eliminating competing companies for Wayne County contracts and thus creating a monopoly with Defendant B & T receiving Defendant Wayne County contracts.

200.    As a direct and proximate result of the aforesaid acts and activities of Defendant B & T, Plaintiff has suffered damage including substantial economic injury, lost profits, and loss of business opportunities, among others.

## COUNT XIII
## UNFAIR TRADE
## PRACTICES RESULTING IN MICHIGAN

**ANTITRUST, MCL 445.771, ET. SEQ., VIOLATIONS
AS TO DEFENDANT BOULEVARD AND TRUMBULL TOWING, INC.**

201.    Plaintiff hereby incorporates Paragraphs 1-200 by reference as if fully restated herein.

202.    Defendant Wayne County is a person as defined by MCL 445.771(1)(a).

203.    Defendant B & T is a person as defined by MCL 445.771(1)(a).

204.    Defendant Metro is a person as defined by MCL 445.771(1)(a).

205.    Defendant B & T and the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to assure that Defendant B & T was awarded the Wayne County equipment auctioning contract.

206.    Specifically, upon information and belief, Defendant B & T solicited and requested that Defendant McNeal award Defendant B & T the at issue equipment auctioning contract, while ignoring Defendant B & T's obvious deficiencies, among other things.

207.    Defendant B & T and the other named Defendants herein participated in bid rigging and price fixing, among other things.

208.    Moreover, Defendant B & T solicited Defendants McNeal and Wayne County to increase Plaintiff's bid in an arbitrary and capricious manner, in violation of Defendant Wayne County's own policies and guidelines; and in furtherance of its agreement, combination or conspiracy with the other named Defendants herein.

209.    Defendant B & T, through its agents and/or employees, froze out Plaintiff's bid and caused Defendant Wayne County to unilaterally and capriciously act to award the contract to Defendant B & T without regard to Plaintiff's qualifications and without regard to the correlating public interest.

210.    Defendant B & T's solicitation of Defendant Wayne County's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning vehicles and equipment to the public within Wayne County.

211.    Once Defendant B & T unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

212.    The above listed actions effectively constitute a restraint of trade against any competing company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder.

213.    The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitor and establish a monopoly of contracts to be awarded solely to B & T companies irrespective of whether or not they meet the minimum qualifications of the contracts.

214.    In fact, the award of the Wayne County contract is detrimental to the public in that the public who are purchasing these Wayne County vehicles and equipment at auction are paying higher prices and the excessive fees that Defendant B & T tacked on to the purchase price.

215.    Defendant B & T and the other named Defendants herein knowingly acted in concert to restrain trade by sharing a common goal for Defendant B & T to become the next preferred vendor to Wayne County contracts to the detriment of the public and other competing vendors.

216.    These concerted actions were intentionally designed to restrain trade and commerce by placing Defendant B & T in another Wayne County contract by effectively eliminating competing companies for Wayne County contracts and thus creating a monopoly with Defendant B & T receiving Defendant Wayne County contracts.

217.    The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and establish a monopoly of contracts to be awarded solely to B & T companies irrespective of whether or not they meet the minimum qualifications of the contracts.

218.    As a direct and proximate result of the aforesaid acts and activities of Defendant B & T, Plaintiff has been caused to sustain damage including substantial economic injury, lost profits, and loss of business opportunities, exemplary damages, among others.


## COUNT XIV
## DEFENDANT BOULEVARD AND
## TRUMBULL TOWING, INC. ENGAGED IN PREDATORY
## PRICING IN VIOLATION OF MICHIGAN ANTI-TRUST LAWS

219.    Plaintiff hereby incorporates Paragraphs 1-218 by reference as if fully restated herein.

220.    Defendant B & T bid a below-cost amount for IFB 37-10-033.

221.    Defendant B & T knew that its below cost bid would constitute the lowest "bid" because it was significantly lower than the costs to perform the contract.

222.    Defendant Wayne County did deem Defendant B & T to be the "lowest bidder" and as such awarded the IFB 37-10-033 contract.

223.    In fact, Defendants MAS and B & T, at its first opportunity to auction Wayne County vehicles and equipment pursuant to the IFB, raised their prices considerably to be able to compensate for its below cost bid amount.

224.    Defendants MAS and B & T charged additional fees at the Wayne County auction held in November 2010, as well as others, to recapture their costs.

225.    These additional fees were in excess of the represented amount on the bid that Defendant Wayne County found to be the lowest.

226.    The additional fees at the November 2010 Wayne County auction allowed Defendants MAS and B & T to make a profit.

227.    Since Defendant B & T was the only approved contractor for this contract with Defendant Wayne County, any threat of a competitor has been effectively eliminated.

228.    As a result of Defendant B & T's predatory pricing, Defendant B & T caused and continues to cause Plaintiff and the citizens of Wayne County damages including, but not limited to substantial economic injury, lost profits, and loss of business opportunities, exemplary damages, among others.

## COUNT XV
### TORTIOUS INTERFERENCE
### WITH AN ADVANTAGEOUS BUSINESS
### RELATIONSHIP OR EXPECTANCY AS TO
### DEFENDANT BOULEVARD AND TRUMBULL TOWING, INC.

229.    Plaintiff hereby incorporates Paragraphs 1-228 by reference as if fully restated herein.

230.    Plaintiff and Defendant Wayne County had a valid business relationship and/or expectancy regarding providing auction services through IFB 37-10-033.

231.    Plaintiff was in a position to be awarded the contract as the lowest bidder under IFB 37-10-033 since Defendant B & T was disqualified as being an unresponsible/unresponsive bidder due to the 15-mile location requirement and its failure to meet the experience requirement.

232.    Defendant B & T, through its agents, was aware of the business relationship and/or expectancy between Plaintiff and Defendant Wayne County.

233.    Defendants MAS and B & T, through the acts of their agents, intentionally and improperly interfered with the advantageous business relationship and/or expectancy between Plaintiff and Defendant Wayne County, when they agreed, contracted and/or conspired to assure that Defendant B & T was winning bidder on IFB 37-10-033; regardless of whether or not they qualified for the contract.

234.    Defendants MAS and B & T, through the acts of its agents, intentional interference caused a termination of the business relationship and/or expectancy between Plaintiff and Defendant Wayne County.

21

235.    Defendants MAS and B & T's intentional interference included intentionally lowering its bid price to a below cost price in order to be the successful bidder and intentionally providing a false address of where the auctions were to be held in order to sway Defendant Wayne County in awarding the bid to Defendants MAS and B & T.

236.    As a result of its agent's actions, Defendant B & T is vicariously liable for any damages Plaintiff suffered and continues to suffer.

237.    As a result of Defendant B & T's tortious interference with Plaintiff's business relationship and/or expectancy, Plaintiff has suffered damages including, but not limited to, reliance damages, lost income, lost earning capacity, loss of business opportunities, exemplary damages and loss of professional reputation.

## COUNT XVI
## CIVIL CONSPIRACY AS TO
## DEFENDANT BOULEVARD AND TRUMBULL TOWING, INC.

238.    Plaintiff hereby incorporates Paragraphs 1-237 by reference as if fully restated herein.

239.    Defendant B & T and the other named Defendants herein illegally, maliciously and wrongfully conspired with one another to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means.

240.    Defendant B & T conspired to tortiously interfere with an advantageous business relationship and/or expectancy; to rig a bid; to fix prices; and to restrain trade when it agreed with the other named Defendants to ignore Defendant B & T's obvious deficiencies; and to alter the calculation of Plaintiff's bid to assure that Defendant B & T was the lowest responsive bidder, among other things.

241.    As a result of Defendant B & T's acts and conspiracy with the other Defendants herein, Defendant B & T caused and continues to cause Plaintiff damages including, but not limited to reliance damages, lost income, lost earning capacity, loss of business opportunities, exemplary damages and loss of professional reputation.

        WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against

Defendants for the following relief:


        a.      Reliance damages in an amount determined by this Court;

        b.      Lost income in an amount determined by this Court;

        c.      Lost profits in an amount determined by this Court;

        d.      Exemplary damages in an amount determined by this Court;

e.      Any other relief as the Court deems warranted.

Respectfully submitted,

I.A.B. Attorneys At Law, PLLC

By: _____
        Felicia Duncan Brock (P63352)
        3319 Greenfield Road, #458
        Dearborn, MI  48120-1212
        (313) 318-3180
        duncan@iabattorneys.com

Dated:  October 17, 2011


**JURY DEMAND**


Plaintiff demands a jury trial.

Respectfully submitted,

I.A.B. Attorneys At Law, PLLC

By: _____
        Felicia Duncan Brock (P63352)
        3319 Greenfield Road, #458
        Dearborn, MI  48120-1212
        (313) 318-3180
        duncan@iabattorneys.com

Dated:  October 17, 2011