# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

MIDWEST AUTO AUCTION, INC.

                Plaintiff,                        Case No. 2:11-cv-14562

vs.                                       Hon. Avern Cohn

CLARENCE MCNEAL, Individually, COUNTY OF
  WAYNE, METRO AUCTION SERVICES, INC.,
  and BOULEVARD & TRUMBULL TOWING, INC.,

                Defendants.

_____/

| | |
|---|---|
| I.A.B. Attorneys At Law, PLLC | Marc A. Deldin |
| Felicia Duncan Brock (P63352) | *Attorneys for Defendants Metro Auction* |
| *Attorneys for Plaintiff* | *Services, Inc. and Boulevard & Trumbull,* |
| 3319 Greenfield Road, #458 | *Inc.* |
| Dearborn, Michigan 48120 | 2411 Vinewood St. |
| (313) 318-3180 | Detroit, Michigan 48216 |
| Duncan@iabattorneys.com | (313) 216-0258 |
| | mdeldin@gmail.com |
| | |
| Dickinson Wright, PLLC | Marianne G. Talon (P35825) |
| Kenneth J. McIntyre (P17450) | Wayne County Corporation Counsel |
| L. Pahl Zinn (P57516) | Aaron C. Thomas (P55114) |
| *Attorneys for Defendants Clarence McNeal* | *Attorneys for Defendants Clarence* |
| *and County of Wayne* | *McNeal and County of Wayne* |
| 500 Woodward Avenue, Suite 400 | 500 Griswold, 11th Floor |
| Detroit, Michigan 48226 | Detroit, Michigan 48226 |
| (313) 223-3500 | (313) 224-0552 |
| kmcintyr@dickinson-wright.com | athomas@co.wayne.mi.us |

_____/

## FIRST AMENDED COMPLAINT AND JURY DEMAND

      Plaintiff MIDWEST AUTO AUCTION, INC., by and through its attorneys, I.A.B.

Attorneys at Law, PLLC, and per its First Amended Complaint, states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      This action is for Unfair Trade Practices and varied other anti-trust violations resulting in Sherman Act Violations; Michigan Antitrust Act Violations; Predatory Pricing; Tortious Interference with a Business Expectancy; and Civil Conspiracy.

2.      As such, this Court has subject matter jurisdiction pursuant to 15 U.S.C. § 15, and 28 U.S.C. §§ 1331, and 1337.

3.      Venue is also proper in this Court pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, 28 U.S.C. §§ 1391 (b) and (c) as the events giving rise to Plaintiff's claims occurred in this District, and the Defendants reside in and are doing business in this District.

4.      Plaintiff MIDWEST AUTO AUCTION INC. ("Midwest") is a privately owned company doing business under the laws of the State of Michigan in the County of Wayne.

5.      Plaintiff has been in the auction services business in Wayne County since 1952.

6.      Defendant CLARENCE MCNEAL ("McNeal") during the relevant time period of this Complaint, served as Purchasing Director for Defendant COUNTY OF WAYNE.

7.      Defendant COUNTY OF WAYNE ("County") is a body corporate and Charter County organized and operating under the laws of the State of Michigan in the County of Wayne.

8.      Defendant METRO AUCTION SERVICES INC. ("MAS") is a privately owned company doing business under the laws of the State of Michigan in the County of Wayne.

9.      Defendant MAS is a company affiliated and/or partnered with Defendant Boulevard & Trumbull Towing, Inc. ("B & T").

10.     Defendant B & T is a privately owned company doing business under the laws of the State of Michigan in the County of Wayne.

11.     B & T's business office, as well as storage yard, is located at 2411 Vinewood St., Detroit, Michigan 48216.

12.     Gasper Fiore is the patriarch of B & T and MAS.  As patriarch, Gasper Fiore manages and directs B & T and MAS.  In addition to B & T and MAS, Gasper Fiore also manages Official Towing, St. Clair Shores, Michigan; Colemans Towing and Recovery, Troy, Michigan; E & G Towing, Detroit, Michigan; Javion & Sam's Towing, Detroit, Michigan; Road Aide Towing, Warren, Michigan; B & G Towing, Detroit, Michigan; CityWide Towing, Detroit, Michigan; and Genes Towing, Detroit, Michigan, among others.

13.     Over the past two years, Gasper Fiore has intentionally transferred ownership of the above-mentioned companies to varied family members and friends (Joan Fiore, Jessica Fiore, Jennifer Fiore and Paul Ott) in an effort to distance himself from the companies.  Nevertheless, Gasper Fiore continues to manage and direct these companies.

2

14.    Many of the acts of Defendants as alleged in this Amended Complaint were authorized, ordered and condoned by their employers and authorized, ordered and performed by their stockholders, appointees, managers, supervisors, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of their business affairs.

15.    Various other persons, corporations, municipalities, or firms not named as Defendants herein have participated in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

16.    The amount in controversy exceeds $75,000.

## **FACTUAL ALLEGATIONS**

17.    The auction services industry within the County of Wayne primarily consists of the auctioning of vehicles, trucks and equipment on behalf of varied governmental agencies.

18.    These varied governmental agencies seek to auction vehicles, trucks and equipment that they own for varied reasons.  Most noted are vehicles that are impounded or forfeited due to criminal activity.  These vehicles become the property of the governmental agency and are auctioned to the public.  Once auctioned, the proceeds (after the auction service provider receives its fee) are paid to the governmental agency.

19.    In addition to auctioning forfeited vehicles, these varied governmental agencies auction vehicles, trucks and equipment that has become outdated and replaced.

20.    Because these governmental agencies, including Wayne County, auction vehicles, trucks and equipment (among other things) they must search out auction services providers to conduct the auctions.

21.    In searching out auction services providers, Wayne County is a consumer of auction services.

22.    In addition, as previously noted, Wayne County receives the proceeds, after the auction services providers receive its fee, from each auctioned vehicle, truck and piece of equipment.  As such, any agreement and/or contract between Wayne County and any auction services provider is a revenue-generating contract for Wayne County.

23.    The activities of Defendants, and their co-conspirators were within the flow of, were intended to, and did have a substantial effect on the interstate commerce of the United States.

24.    The auctions discussed herein are open to all public, in state and out of state.  As such, the purchasers of the vehicles, trucks and equipment are from Michigan as well as other states.  Because of the inherent mobility of vehicles and trucks, the auctioned product is regularly driven to and registered in states outside of Michigan.

25.    Also, many of the consumers of the auction services within the County of Wayne are federal governmental agencies.   These agencies are national, and for the most part are

3

headquartered in Washington, D.C.  Additionally, the auction service providers purchase fuel and insurance from vendors that are not headquartered in Michigan.  Further, the financing for the purchase of the auctioned vehicles, trucks and equipment is obtained from banking institutions headquartered and providing banking services in many other states besides Michigan. Finally, B & T and MAS advertise these auctions and list the vehicles to be auctioned on their on-line websites.  On-line advertising necessarily reaches potential buyers throughout the country.

26.    Wayne County has a "bidding" style process for county service contracts, also known as an Invitation for Bid ("IFB").  The Wayne County Charter requires that contracts be awarded to the lowest responsive and responsible bidder.  Before awarding such contracts, Wayne County requires an IFB to be issued to the general public defining the services required; the qualifications of the parties; as well as, other requirements.

27.    Wayne County Purchasing receives all formal bids for county contracts.

28.    On February 11, 2010, Defendant County issued an IFB for Vehicle and Equipment Auction Service, identified by Control No. 37-10-033.  The original bid deadline was March 4, 2010 at 2:30 p.m.

29.    The Pre-Bid Question deadline was Tuesday, February 23, 2010 at 4:00 p.m.  Written questions regarding the substance of the IFB were to be submitted to the purchasing contact, Conrado Renteria, via email.

30.    One IFB requirement was that the bidder's vehicle storage yard <u>and</u> business office must be located within fifteen (15) miles of 29900 Goddard Road, Bldg. 1, Romulus, Michigan.  Each Bidder's location mileage was to be verified using MapQuest.  In addition, the bidder had to possess a class D (Broker) license through the State of Michigan and had to have one similar-sized and type contract within the last two-years.

31.    To be considered similar type, the contract must include experience in consignment sales for public entities and include both office furnishings and equipment and vehicles and major equipment such as:  construction & heavy equipment (dozers, graders, end loaders, rollers, excavators, etc.), road maintenance equipment (dumps, pick-ups, tractors, mowers, etc.) and general vehicles & equipment (police cars, passenger cars, vans, etc.).

32.    On or about March 3, 2010, Addendum No. 1 to the IFB was issued addressing various questions potential bidders submitted to the County.  Notably, the first question asked was "why is this restricted to companies within 15 miles of 29900 Goddard, Romulus?"  The Defendant County responded that "[t]he 15 mile radius was set to minimize costs associated with transportation of items to the auctions."  It became clear to any potential bidders that the equipment and/or vehicles would be towed from Defendant Wayne County's Goddard address to the auction location.

33.    Addendum No. 1 also changed the bid deadline from the very next day, March 4, 2010 at 2:30 p.m., to March 16, 2010 at 2:30 p.m.

4

34.     On March 10, 2010, Addendum No. 2 was issued.  In the second set of submitted Pre-Bid Questions, a potential bidder inquired whether there was a separate transportation cost category for heavy-equipment.  The Defendant County responded that "only vehicles will be moved by the contractor, so this will not be an issue."

35.     Plaintiff Midwest timely submitted a bid in response to IFB 37-10-033.

36.     Defendant County has the submitted bids and all documents relative to IFB 37-10-033 in its possession.

37.     Plaintiff met all of the requirements of the IFB 37-10-033; and was therefore a responsive and responsible bidder in all aspects.

38.     Defendant B & T also submitted a bid for IFB 37-10-033.  A subcontractor, Defendant MAS, was included in Defendant B & T's bid package.

39.     Some months after the IFB deadline date, Defendant County provided all bidders, including Plaintiff Midwest, with an unofficial chart of all the bidders and their respective bids. On the unofficial bid chart, Defendant B & T was the lowest bidder at $35,250; and Plaintiff Midwest was the next lowest at $47,625.

40.     Subsequently, Defendant County issued an official bid chart. On the official bid chart, Defendant B & T was identified as being non-responsible because it's location as tabulated from 2411 Vinewood exceeded the 15 mile limit requirement.

41.     There was no mention of the fact that B & T's subcontractor—Defendant MAS did not have a similar contract (as defined in the IFB) within the year prior.  In fact, Defendant MAS did not obtain its Class D Broker license until September 28, 2009.

42.     Worth noting, at the time that it obtained its Class D Broker license, MAS indicated to the State of Michigan that it was located at 2411 Vinewood St.—the same address as B & T's offices and storage yard.  According to the State of Michigan, all auctions must be held at the address that the Class D license is registered to, unless the company submits a formal application/request to conduct the auction at another location.

43.     Also worth noting, although disqualified, Defendant B & T's bid--$35,250.00—was more than 65% lower than the next lowest bidder.  In fact, B & T's bid was below average variable costs and would cause B & T not to cover its baseline costs.

44.     For example, B & T bid $.50/mile for mileage.  In order to cover its costs, B & T would have to charge at least $1.07/mile for towing services.  The $1.07/mile is the rate necessary to cover the costs of driver labor to tow the vehicle, fuel, worker's compensation insurance, truck insurance, truck maintenance, truck finance payments, and Michigan Public Service Commission licensing, among other costs.

45.     But for the fact that B & T was deemed non-responsible, its below average variable cost bid would have made it the lowest bidder.

5

46.     On or about May 27, 2010, Defendant County determined that Martin's Towing was the successful bidder for the IFB 37-10-033.

47.     Upon further inspection, Plaintiff discovered that Defendant County tampered with and incorrectly tabulated its bid.  An additional $12,375 was erroneously added to Plaintiff's bid; increasing Plaintiff's bid to $57,600.  Because Defendant County tampered with Plaintiff's bid, Plaintiff was now the second lowest bidder behind Martin's Towing.  But for this tampering, Plaintiff would have been the lowest bidding company as Defendant B & T was disqualified as non-responsible; and Martin's Towing's bid was $4,500 higher than Plaintiff's.

48.     Immediately upon noting Defendant County's error, Plaintiff Midwest made many unsuccessful attempts to contact Defendant County to object to and further discuss the discrepancy in bid amounts.

49.     On June 2, 2010, Defendant B & T filed a bid protest.  The bid protest argued several points.  First, B & T asserted that Defendant Wayne County's requirement that the company awarded the contract be within 15 miles of 29900 Goddard, Romulus, Michigan will not minimize Wayne County's costs.  Second, B & T asserted that "B & T's location" is at 7900 Dix, Detroit, Michigan.

50.     However, B & T never moved its offices and storage yard to 7900 Dix.

51.     B & T also asserted that Martin's Mileage costs were 500% higher than B & T's; and as such would cost Wayne County more money.  Finally, B & T asserted language from the Wayne County Charter in defense of its being awarded the contract.

52.     In or about the beginning of June 2010, Plaintiff finally made telephone contact with Defendant McNeal.  Defendant McNeal informed Plaintiff that Plaintiff's bid was re-calculated based on additional costs (tow cost of $140.00/tow plus $2.00/mile towed) included on Plaintiff's submitted bid package for vehicles over 12,000 pounds and in non-running condition.

53.     In fact, Plaintiff's actual bid was for $55.00 per tow.  The additional tow rate that Defendant Wayne County recalculated Plaintiff's bid was for the small percentage of vehicles over 12,000 pounds and in non-running condition.

54.     Defendant McNeal was aware that he erroneously tampered with and incorrectly tabulated Plaintiff's bid because of the answer issued in Addendum No. 2.  Because the chosen company would only transport vehicles under the Contract, there is no need to include the cost for towing vehicles or trucks over 12,000 pounds. (Note: the average vehicle weighs 4500 pounds).

55.     When challenged with this fact, Defendant McNeal informed Plaintiff that 95% of the vehicles that will be transported under the Contract will fall within this higher cost category; and therefore the bid amount of $140.00/tow fee would stand.  Defendant McNeal also made it clear that any attempt from Plaintiff to file a bid protest would not be successful.  For this reason, Plaintiff did not formally protest the recalculation.

56.     It was during this telephone call that Plaintiff Midwest became aware that the contract was awarded to the disqualified bidder, Defendant B & T.

57.     Between the time that the unofficial bid chart was issued and Plaintiff had this conversation with Defendant McNeal; Defendants B & T and MAS, through its varied Fiore representatives, had numerous opportunities to discuss, conspire, contract and combine with Defendant McNeal.

58.     Without dispute, Defendant McNeal's, as Wayne County Procurement Director, direct dial telephone number is available to the public via the Internet.  Also, Defendant McNeal signed the letters written between Defendants Wayne County, B & T, MAS and the other competitors identifying him as the Procurement Director.  In addition, Defendant McNeal is also in direct contact with other co-conspirators within Wayne County (i.e. Robert Ficano, Wayne County Executor and Benny Napoleon, Wayne County Sheriff).

59.     Worth also noting, B & T, the varied other Fiore owned companies (those listed and not listed herein), the companies' employees and the individual Fiore's heavily donate to Ficano's and Napoleon's election campaigns and/or PACs that support Ficano's and Napoleon's election efforts.

60.     Ficano and Napoleon also had numerous opportunities to discuss, conspire, contract and combine with B & T, the varied Fiore representatives, and Defendant McNeal at varied Wayne County and personal events (i.e. birthday parties, election parties, campaign fundraisers, and charity events like the annual Easter egg hunt).

61.     On or about July 12, 2010, Defendant County sent out a letter confirming that it re-evaluated the bids and that Defendant B & T would be the lowest responsive and responsible bidder.

62.     Suspiciously, even though the IFB required the bidder's storage yard and office to be within a 15 mile radius of the County's Goddard Road address; and was also specifically addressed in the potential bidders' pre-bid questions confirming the 15 mile radius; Defendant B & T was miraculously permitted to proceed as a responsive/responsible bidder on IFB 37-10-033.

63.     Defendant County knowingly, intentionally and purposely manipulated, through the acts of Defendant McNeal, Plaintiff Midwest's bid, strategically placing the bid behind the bid of Martin's Towing and that of Defendant B & T.

64.     As a result of B & T's below average variable cost bid; and McNeal's manipulation of Plaintiff's bid, Martin's Towing, Plaintiff Midwest, A-1 Auto Auction, Inc., Manheim Auctions Government Services, LLC and any other auctioning company that because it was outside of the 15 mile radius did not bid on the contract, as competitors of B & T and MAS, were damaged because of the lost opportunity to provide these auctioning services within the County of Wayne.

65.     More specifically, Plaintiff's revenue over the last 2 years has drastically dropped causing Plaintiff to have to reduce its work force.  This drop in revenue is due to Defendant B &

7

T's and MAS's attempted monopoly.  Had Plaintiff been awarded the Wayne County contract, its revenue would have been enough to sustain its work force.  In fact, in merely three auctions, Defendants B & T and MAS generated approximately $40,000.

66.     Because the private consumers of auction services constitute less than 15% of the auction services market within the County of Wayne; governmental/public consumers primarily constitute this auction services market.

67.     In addition to auctioning for Wayne County, in recent years, B & T has obtained contracts to auction vehicles, trucks and equipment for the City of Detroit, the U.S. Marshalls Service, the FBI, the Michigan State Police, and the City of Hamtramck, among others.

68.     All of these auctions are held within the County of Wayne.

69.     Currently, Defendant B & T and its owners provide auctioning services for approximately 75% of the vehicle, truck and equipment auctioning services market within the County of Wayne.  B & T, MAS and their co-conspirators (especially the other Fiore owned towing companies that also provide auctioning services) collectively control the vast majority of the County of Wayne market for auction services.

70.     Defendant B & T's and MAS's auctioning services market share continues to grow with B & T's illegally obtaining auctioning contracts as described herein.

71.     For example, as for the City of Detroit auctioning contract, in June 2011, Defendant B & T (along with at least four other Fiore owned towing companies) filed a lawsuit against the City of Detroit because it believed the Fiore companies were not receiving enough tow calls and as such performing enough auctions.

72.     The City of Detroit, in an effort to stop B & T's and the Fiore's growing monopoly over the towing and auctioning of vehicles impounded for the Detroit Police Department, modified the towing and auctioning rules so that companies that are cross-owned or family owned would only occupy one slot on the towing rotation.

73.     Defendant B & T and its owners are arguing that each of its companies should occupy a separate slot on each City of Detroit rotation.  Notably, the City of Detroit rotations have at most six slots.  Based on B & T's argument, a Fiore owned company would occupy four (67%) or more slots on each rotation.

74.     In addition, in an effort to continue its attempted monopoly of the City of Detroit towing and auctioning, B & T and the other Fiore owned companies entered into a scheme by which it represented to the City of Detroit that each company is headquartered at multiple addresses within Detroit, Wayne County.

75.     Being headquartered at multiple addresses allows B & T and the other Fiore owned companies to be placed on the towing rotation for each police district and/or precinct the property is located within.

8

76.     As such, B & T and the other Fiore companies are attempting to be placed on no less than 5 of 7 (71%) of Detroit Police Department rotations; and to fill upwards of four slots on each of those rotations.

77.     Notably, attempting to monopolize towing calls within the City of Detroit also leads to an increase in the providing of auctioning services within the County of Wayne. Whenever a vehicle's owner does not retrieve the impounded vehicle, the vehicle is auctioned per City of Detroit rules.

78.     To date, B & T has conducted at least three auctions under the Wayne County contract described herein.

79.     On or about November 13, 2010, Defendant B & T conducted its first auction pursuant to IFB 37-10-033. At this auction, Defendant B & T's sub-contractor, Defendant MAS conducted the auction.

80.     Recall, MAS's Class D license was registered to its Vinewood address. At some point after September 2009, Defendant MAS changed its Class D license address to 3411 W. Fort Street, Detroit, Michigan.

81.     Puzzling, the City of Detroit rents 3411 W. Fort Street in its entirety. In spite of this fact, MAS represented to the State of Michigan that it is located and conducts its auctions at Fort Street. Also, 3411 W. Fort Street is just over 17 miles from the Goddard Street address. Conducting the auctions at this location violates the requirements of the IFB.

82.     At the November 2010 auction, Defendant B & T, through its sub-contractor Defendant MAS, charged multiple fees in an effort to recoup its loses that resulted from submitting a below average variable cost bid. Examples of Defendant B & T's charged auction fees include document fees, storage fees, gate fees, auction service fees and bidder registration fees. These additional fees violate the provisions in IFB 37-10-033.

83.     The fees charged at the November 2010 auction, if included in B & T's bid, would have greatly increased Defendant B & T's bid; and therefore would have placed B & T's bid more competitively in line with the other submitted bids.

84.     In addition to assessing undisclosed charges, Defendants B & T and MAS committed the following violations at the November 2010 auction--lack of required handicapped portable toilet facilities available for public use; and inadequate food handling procedures when Defendant MAS was selling hot dogs and other concessions.

85.     Even more amazing, as it turns out neither Defendants B & T and/or MAS were qualified to hold the auctions. For this reason, B & T and MAS hired Plaintiff Midwest's President George Bedeen as auctioneer for the auction(s). George Bedeen, in addition to being licensed to perform auctions within the City of Detroit and State of Michigan, is also on the Board of Directors of the National Association of Public Auto Auctions. As such, he has the requisite expertise and experience to perform auctions within the County of Wayne.

9

86.     As for the additional fees Defendant MAS charged winning auction bidders, had they been disclosed on the bid, would have adjusted Defendant B & T's overall buyer premium percentage in excess of their winning 7% bid.

87.     Further, recouping costs in this manner is in direct violation of the IFB bid requirements, which provide that the compensation stated on the bidder's price sheet is all encompassing of remuneration to which the contractor is entitled.

88.     Notably, Defendant Wayne County was fully aware of the aforementioned recouping of costs because numerous Defendant Wayne County employees were present at, witnessed and monitored the auctions.

89.     Moreover, charging excessive fees (especially the entrance fees) has caused a decrease in the number of potential buyers who attend the auctions.  As such, B & T's auctioning under this contract has caused Defendant Wayne County to receive less revenue.

90.     For example, for like makes, models and condition of vehicles, the following comparisons of sales prices was made:

| Make | Model | Year | MAS/Wayne County Auction | Midwest | Diff |
|------|-------|------|--------------------------|---------|------|
| Ford | Crown Vic | 2001 | $1350 | $2900 | $1550 |
| Ford | Crown Vic | 2005 | $900 | $3625 | $2725 |
| Dodge | Durango | 2000 | $2050 | $3000 | $950 |
| Ford | Crown Vic | 2000 | $1675 | $3300 | $1625 |
| Ford | Crown Vic | 2003 | $1150 | $2800 | $1650 |
| Chevrolet | Blazer | 2001 | $700 | $1600 | $900 |
| | | **Total** | **$7825** | **$17,225** | **$9400** |

91.     In addition, Defendant Co-conspirator and Terminal Manager of the Fiore owned B & G purchased nearly every vehicle auctioned at the Wayne County auctions.  Most notably, Michael Lucas purchased these vehicles at the below scrap pricing of $300-$400 each.

92.     Again, Defendant B & T was recouping its loss from submitting a below average variable cost bid.  B & T was able to sale, part and/or scrap these vehicles for far more than the purchase price.

10

93.   Ultimately the consumer Defendant Wayne County was damaged because the revenue it received from the auctions was far less than if Wayne County would have contracted with Plaintiff and/or one of the other bidders.

94.   Defendant Wayne County entered into the auction services market within the County of Wayne in order to generate revenue.  As previously described, Wayne County, just like any private vehicle, truck and/or equipment owner chooses to auction this merchandise to generate revenue.

95.   Despite the many violations of Defendants B & T and MAS, Defendant Wayne County continues to utilize their services for fulfilling the contract.

96.    B & T also held a second auction at the Fort Street address.

97.   Again, B & T charged excessive fees to recoup its losses due to its below average variable cost bid.

98.   The third auction under the Wayne County Contract took place at 8100 Lynch Road, Detroit, Michigan.  This location is more than 22 miles from the Goddard address.

99.   True to form, B & T again charged excessive fees to recoup from its below average variable cost bid.

100.   Again, Defendant Wayne County officials were present at, witnessed and monitored this auction located well beyond the 15-mile requirement.

**COUNT I**
**RESTRAINT OF TRADE**
**RESULTING IN SHERMAN ACT, 15 USC §§ 1,**
**ET. SEQ., AND CLAYTON ACT SECTION**
**12 VIOLATIONS AS TO DEFENDANT CLARENCE MCNEAL**

101.   Plaintiff hereby incorporates Paragraphs 1-100 by reference as if fully restated herein.

102.   Defendant McNeal, during the relevant times of this lawsuit, was the Purchasing/Procurement Director for Defendant Wayne County.

103.   Defendant McNeal and the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to further Defendant B & T's attempted monopoly of the auction services industry within Wayne County.

104.   Specifically, Defendant McNeal agreed with the other named Defendants to ignore Defendant B & T's obvious deficiencies; and to tamper with Plaintiff's bid to assure that Defendant B & T was the lowest responsible/responsive bidder, among other things.

105.   More specifically, Defendant McNeal's decision to allow Defendant B & T to re-enter the bidding process after declaring Defendant B & T to be a non-responsible bidder is an

11

arbitrary and capricious decision in violation of its own policies and guidelines and in furtherance of its agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

106.    Defendant McNeal's unilateral decision to increase Plaintiff Midwest's bid amount was yet another arbitrary and capricious decision in violation of Defendant Wayne County's own policies and guidelines and in furtherance of his agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

107.    The anti-competitive acts of Defendant McNeal and all co-conspirators were intentionally directed to the end goal of monopolizing the auctioning services industry within the County of Wayne.

108.    Also, Defendant McNeal received personal benefits from the other named Defendants herein and from the other co-conspirators to so contract, combine and/or conspire.  For example, shortly after the awarding of the contract described herein, co-conspirator Ficano appointed Defendant McNeal to a position within Defendant Wayne County.  The appointed position came with an increase in pay, benefits and prestige within the community.

109.    Moreover, upon information and belief, Defendant McNeal received other personal benefits including cash payments, gifted vehicles and the opportunity to purchase vehicles and equipment from the auctions at a reduced rate for Defendant McNeal, his friends and family.

110.    Further, many of Defendant McNeal's actions in furthering B & T's attempted monopoly were outside of the scope of his employment; and/or exceeded the scope of his authority as a Purchasing/Procurement Director.

111.    Defendant McNeal's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning services within the County of Wayne.

112.    Defendant McNeal further restrained trade by aiding Defendant B & T in its effort to be the only auctioning services provider within the County of Wayne; and to damage the citizens of Wayne County and the State of Michigan by charging exorbitant fees to attend the auctions and adding additional fees to the costs of any vehicle or equipment purchased.

113.    Once Defendant McNeal unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

114.    The above listed actions effectively constitute a restraint of trade against any competing auctioning services company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder—furthering the attempted monopoly.

12

115.    The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and to further B & T's attempted monopoly irrespective of whether or not B & T meets the minimum qualifications of the contracts.

116.    As a result of the attempted monopoly of auctioning services within the County of Wayne, the following antitrust injuries were suffered:

>   a.  B & T's auctioning services competitors, including Plaintiff and the other competitors named herein, are being forced out of the auctioning services industry within the County of Wayne;

>   b.  The consumers of the auctioning services, the governmental agencies, are receiving a lesser product in that Defendant B & T lacks the required experience and expertise to obtain the highest value for the auctioned vehicles, trucks and equipment.  As such, the revenue generated is greatly reduced.

>   c.  The potential purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant fees, including gate fees, auction service fees and bidder registration fees, in order to attend the auctions.  Because competition has been effectively restrained, potential purchasers have no alternative to paying these fees to attend auctions of vehicles, trucks and equipment.

>   d.  The purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant auction fees including document fees, storage fees, gate fees, auction service fees and bidder registration fees.

>   e.  Purchasers of auctioned vehicles, trucks and equipment have been deprived of free and open competition in the auction services industry within the County of Wayne.

>   f.  Price competition between auction services providers has been restrained, suppressed, or eliminated because B & T, providing 75% of the auctioning services within the County of Wayne, is nearly the only auctioning services provider within the County of Wayne.

>   g.  Pricing for providing auctioning services within the County of Wayne has dropped to below competitive levels because of B & T's winning, below average variable cost bids.

117.    The aforementioned anti-trust injuries flow from the anti-trust violations described herein.

118.    As a direct and proximate result of the aforesaid acts and activities of Defendant McNeal, Plaintiff, as well as other competitors, has and will continue to suffer additional damage including substantial economic injury, lost profits, and loss of business opportunities, among others.

13

**COUNT II**
**UNFAIR TRADE PRACTICES**
**RESULTING IN MICHIGAN ANTITRUST, MCL 445.771,**
**ET. SEQ., VIOLATIONS AS TO DEFENDANT CLARENCE MCNEAL**

119.    Plaintiff hereby incorporates Paragraphs 1-118 by reference as if fully restated herein.

120.    Defendant McNeal, during the relevant times of this lawsuit, was the Purchasing/Procurement Director for Defendant Wayne County.

121.    Defendant McNeal is a person as defined by MCL 445.771(1)(a).

122.    Defendant B & T is a person as defined by MCL 445.771(1)(a).

123.    Defendant MAS is a person as defined by MCL 445.771(1)(a).

124.    Defendant McNeal and the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to further Defendant B & T's attempted monopoly of the auction services industry within Wayne County.

125.    Specifically, Defendant McNeal agreed with the other named Defendants to ignore Defendant B & T's obvious deficiencies; and to tamper with Plaintiff's bid to assure that Defendant B & T was the lowest responsive bidder, among other things.

126.    More specifically, Defendant McNeal's decision to allow Defendant B & T to re-enter the bidding process after declaring Defendant B & T to be a non-responsible bidder is an arbitrary and capricious decision in violation of its own policies and guidelines and in furtherance of its agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

127.    Defendant McNeal's unilateral decision to increase Plaintiff Midwest's bid amount was yet another arbitrary and capricious decision in violation of Defendant Wayne County's own policies and guidelines and in furtherance of his agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

128.    The anti-competitive acts of Defendant McNeal and all co-conspirators were intentionally directed to the end goal of monopolizing the auctioning services industry within the County of Wayne.

129.    Also, Defendant McNeal received personal benefits from the other named Defendants herein and from the other co-conspirators to so contract, combine and/or conspire. For example, shortly after the awarding of the contract described herein, co-conspirator Ficano appointed Defendant McNeal to a position within Defendant Wayne County. The appointed position came with an increase in pay, benefits and prestige within the community.

14

130.   Moreover, upon information and belief, Defendant McNeal received other personal benefits including cash payments, gifted vehicles and the opportunity to purchase vehicles and equipment from the auctions at a reduced rate for Defendant McNeal, his friends and family.

131.   Further, many of Defendant McNeal's actions in furthering B & T's attempted monopoly were outside of the scope of his employment; and/or exceeded the scope of his authority as a Purchasing/Procurement Director.

132.   Defendant McNeal's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning services within the County of Wayne.

133.   Defendant McNeal further restrained trade by aiding Defendant B & T in its effort to be the only auctioning services provider within the County of Wayne; and to damage the citizens of Wayne County and the State of Michigan by charging exorbitant fees to attend the auctions and adding additional fees to the costs of any vehicle or equipment purchased.

134.   Once Defendant McNeal unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

135.   The above listed actions effectively constitute a restraint of trade against any competing auctioning services company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder—furthering the attempted monopoly.

136.   The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and to further B & T's attempted monopoly irrespective of whether or not B & T meets the minimum qualifications of the contracts.

137.   As a result of the attempted monopoly of auctioning services within the County of Wayne, the following antitrust injuries were suffered:

   a.   B & T's auctioning services competitors, including Plaintiff and the other competitors named herein, are being forced out of the auctioning services industry within the County of Wayne;

   b.   The consumers of the auctioning services, the governmental agencies, are receiving a lesser product in that Defendant B & T lacks the required experience and expertise to obtain the highest value for the auctioned vehicles, trucks and equipment.  As such, the revenue generated is greatly reduced.

   c.   The potential purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant fees, including gate fees, auction service fees and bidder registration fees, in order to attend the auctions.  Because competition has been

effectively restrained, potential purchasers have no alternative to paying these fees to attend auctions of vehicles, trucks and equipment.

d. The purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant auction fees including document fees, storage fees, gate fees, auction service fees and bidder registration fees.

e. Purchasers of auctioned vehicles, trucks and equipment have been deprived of free and open competition in the auction services industry within the County of Wayne.

f. Price competition between auction services providers has been restrained, suppressed, or eliminated because B & T, providing 75% of the auctioning services within the County of Wayne, is nearly the only auctioning services provider within the County of Wayne.

g. Pricing for providing auctioning services within the County of Wayne has dropped to below competitive levels because of B & T's winning, below average variable cost bids.

138.    The aforementioned anti-trust injuries flow from the anti-trust violations described herein.

139.    As a direct and proximate result of the aforesaid acts and activities of Defendant McNeal, Plaintiff, as well as other competitors, has and will continue to suffer additional damage including substantial economic injury, lost profits, and loss of business opportunities, among others.

### COUNT III
### TORTIOUS INTERFERENCE WITH
### AN ADVANTAGEOUS BUSINESS RELATIONSHIP OR
### EXPECTANCY AS TO DEFENDANT CLARENCE MCNEAL

140.    Plaintiff hereby incorporates Paragraphs 1-139 by reference as if fully restated herein.

141.    Plaintiff and Defendant Wayne County had a valid business relationship and/or expectancy regarding providing auction services through IFB 37-10-033.

142.    Defendant McNeal was aware of the business relationship and/or expectancy between Plaintiff and Defendant Wayne County.

143.    Plaintiff was in a position to be awarded the auctioning contract under IFB 37-10-033 as the lowest responsive/responsible bidder because Defendant B & T was disqualified as being an unresponsible bidder due to the 15-mile location requirement and its failure to meet the experience requirement.

16

144.    Defendant McNeal intentionally and improperly interfered with the advantageous business relationship and/or expectancy between Plaintiff and Defendant Wayne County, when he agreed, combined, contracted and/or conspired to assure that Defendant B & T was the winning bidder on IFB 37-10-033; regardless of whether or not they qualified for the contract.

145.    Also, Defendant McNeal received personal benefits from the other named Defendants herein and from the other co-conspirators to so interfere with the business relationship between Plaintiff and Defendant Wayne County contract.  For example, shortly after the awarding of the contract described herein, co-conspirator Ficano appointed Defendant McNeal to a position within Defendant Wayne County.  The appointed position came with an increase in pay, benefits and prestige within the community.

146.    Moreover, upon information and belief, Defendant McNeal received other personal benefits including cash payments, gifted vehicles and the opportunity to purchase vehicles and equipment from the auctions at a reduced rate for Defendant McNeal, his friends and family.

147.    Further, many of Defendant McNeal's actions were outside of the scope of his employment; and/or exceeded the scope of his authority as a Purchasing/Procurement Director.

148.    Defendant McNeal's intentional interference caused a termination of the business relationship and/or expectancy between Plaintiff and Defendant Wayne County as to IFB 37-10-033.

149.    As a result of Defendant McNeal's tortious interference with Plaintiff's business relationship and/or expectancy, Plaintiff has suffered damages including, but not limited to, reliance damages, lost income, lost earning capacity, loss of business opportunities, exemplary damages and loss of professional reputation.

## COUNT IV
## CIVIL CONSPIRACY AS
## TO DEFENDANT CLARENCE MCNEAL

150.    Plaintiff hereby incorporates Paragraphs 1-149 by reference as if fully restated herein.

151.    Defendant McNeal and the other named Defendants herein illegally, maliciously and wrongfully conspired with one another to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means.

152.    Defendant McNeal conspired to tortiously interfere with an advantageous business relationship and/or expectancy, to steer a bid, to fix prices, and to restrain trade when he agreed with the other named Defendants to ignore Defendant B & T's obvious deficiencies; and to alter the calculation of Plaintiff's bid to assure that Defendant B & T was the lowest responsive/responsible bidder, among other things as described herein.

153.    Defendant McNeal received personal benefits from the other named Defendants herein and from the other co-conspirators to so contract, combine and/or conspire.  For example, shortly

after the awarding of the contract described herein, co-conspirator Ficano appointed Defendant McNeal to a position within Defendant Wayne County.  The appointed position came with an increase in pay, benefits and prestige within the community.

154.    Moreover, upon information and belief, Defendant McNeal received other personal benefits including cash payments, gifted vehicles and the opportunity to purchase vehicles and equipment from the auctions at a reduced rate for Defendant McNeal, his friends and family.

155.    Further, many of Defendant McNeal's actions were outside of the scope of his employment; and/or exceeded the scope of his authority as a Purchasing/Procurement Director.

156.    As a result of Defendant McNeal's acts and conspiracy with the other Defendants herein, Defendant McNeal caused and continues to cause Plaintiff damages including, but not limited to reliance damages, lost income, lost earning capacity, loss of business opportunities, exemplary damages and loss of professional reputation.

**COUNT V**
**RESTRAINT OF TRADE RESULTING**
**IN SHERMAN ACT, 15 USC §§ 1, ET. SEQ., AND CLAYTON**
**ACT SECTION 12 VIOLATIONS AS TO DEFENDANT COUNTY OF WAYNE**

157.    Plaintiff hereby incorporates Paragraphs 1-156 by reference as if fully restated herein.

158.    Defendant Wayne County, by and through the actions of its officials, employees and/or agents, and along with the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to further Defendant B & T's attempted monopoly of the auction services industry within Wayne County.

159.    Specifically, Defendant Wayne County, by and through the actions of its officials, employees and/or agents, agreed with the other named Defendants to ignore Defendant B & T's obvious deficiencies; and to tamper with Plaintiff's bid to assure that Defendant B & T was the lowest responsive/responsible bidder, among other things.

160.    More specifically, Defendant Wayne County's decision to allow Defendant B & T to re-enter the bidding process after declaring Defendant B & T to be a non-responsible bidder is an arbitrary and capricious decision in violation of its own policies and guidelines and in furtherance of its agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

161.    Defendant Wayne County's unilateral decision to increase Plaintiff Midwest's bid amount was yet another arbitrary and capricious decision in violation of Defendant Wayne County's own policies and guidelines and in furtherance of its agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

162.   The anti-competitive acts of Defendant Wayne County and all co-conspirators were intentionally directed to the end goal of monopolizing the auctioning services industry within the County of Wayne.

163.   Defendant Wayne County's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning services within the County of Wayne.

164.   Defendant Wayne County further restrained trade by aiding Defendant B & T in its effort to be the only auctioning services provider within the County of Wayne; and to damage the citizens of Wayne County and the State of Michigan by charging exorbitant fees to attend the auctions and adding additional fees to the costs of any vehicle or equipment purchased.

165.   Worth noting, there is no federal, state or local statute, ordinance, policy or any other form of authorization that gives Defendant Wayne County the authority to regulate the auction services industry within the County of Wayne, and/or to displace competition for providing auction services within the County of Wayne.

166.   In addition, because Defendant Wayne County is a consumer of auctioning services, and because it generates revenue from the auctioning services that it procures, (just as any private consumer) Defendant Wayne County is a market participant in the market of auctioning services within the County of Wayne.

167.   Adding to it being a consumer, Defendant Wayne County actively participates in the auctioning of its vehicles, trucks and equipment.  For example, Wayne County in its auctioning services contracts specifically asserts control over the auction process, the auction bids and other facets of the auctions.

168.   Once Defendant Wayne County unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

169.   The above listed actions effectively constitute a restraint of trade against any competing auctioning services company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder—furthering the attempted monopoly.

170.   The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and to further B & T's attempted monopoly irrespective of whether or not B & T meets the minimum qualifications of the contracts.

171.   As a result of the attempted monopoly of auctioning services within the County of Wayne, the following antitrust injuries were suffered:

19

a. B & T's auctioning services competitors, including Plaintiff and the other competitors named herein, are being forced out of the auctioning services industry within the County of Wayne;

b. The consumers of the auctioning services, the governmental agencies, are receiving a lesser product in that Defendant B & T lacks the required experience and expertise to obtain the highest value for the auctioned vehicles, trucks and equipment. As such, the revenue generated is greatly reduced.

c. The potential purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant fees, including gate fees, auction service fees and bidder registration fees, in order to attend the auctions. Because competition has been effectively restrained, potential purchasers have no alternative to paying these fees to attend auctions of vehicles, trucks and equipment.

d. The purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant auction fees including document fees, storage fees, gate fees, auction service fees and bidder registration fees.

e. Purchasers of auctioned vehicles, trucks and equipment have been deprived of free and open competition in the auction services industry within the County of Wayne.

f. Price competition between auction services providers has been restrained, suppressed, or eliminated because B & T, providing 75% of the auctioning services within the County of Wayne, is nearly the only auctioning services provider within the County of Wayne.

g. Pricing for providing auctioning services within the County of Wayne has dropped to below competitive levels because of B & T's winning, below average variable cost bids.

172.  The aforementioned anti-trust injuries flow from the anti-trust violations described herein.

173.  As a direct and proximate result of the aforesaid acts and activities of Defendant Wayne County and/or its agents, Plaintiff, as well as other competitors, has and will continue to suffer damage including substantial economic injury, lost profits, loss of reputation and loss of business opportunities, among others.

174.  Defendant Wayne County is liable or vicariously liable for all damages.

## <u>COUNT VI</u>
## UNFAIR TRADE PRACTICES
## RESULTING IN MICHIGAN ANTITRUST, MCL 445.771,
## ET. SEQ., VIOLATIONS AS TO DEFENDANT COUNTY OF WAYNE

175.    Plaintiff hereby incorporates Paragraphs 1-174 by reference as if fully restated herein.

176.    Defendant Wayne County is a person as defined by MCL 445.771(1)(a).

177.    Defendant B & T is a person as defined by MCL 445.771(1)(a).

178.    Defendant MAS is a person as defined by MCL 445.771(1)(a).

179.    Defendant Wayne County, by and through the actions of its officials, employees and/or agents, and along with the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to further Defendant B & T's attempted monopoly of the auction services industry within Wayne County.

180.    Specifically, Defendant Wayne County, by and through the actions of its officials, employees and/or agents, agreed with the other named Defendants to ignore Defendant B & T's obvious deficiencies; and to tamper with Plaintiff's bid to assure that Defendant B & T was the lowest responsive/responsible bidder, among other things.

181.    More specifically, Defendant Wayne County's decision to allow Defendant B & T to re-enter the bidding process after declaring Defendant B & T to be a non-responsible bidder is an arbitrary and capricious decision in violation of its own policies and guidelines and in furtherance of its agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

182.    Defendant Wayne County's unilateral decision to increase Plaintiff Midwest's bid amount was yet another arbitrary and capricious decision in violation of Defendant Wayne County's own policies and guidelines and in furtherance of its agreement, combination or conspiracy with Defendant B & T to award Defendant B & T the contract.

183.    The anti-competitive acts of Defendant Wayne County and all co-conspirators were intentionally directed to the end goal of monopolizing the auctioning services industry within the County of Wayne.

184.    Defendant Wayne County's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning services within the County of Wayne.

185.    Defendant Wayne County further restrained trade by aiding Defendant B & T in its effort to be the only auctioning services provider within the County of Wayne; and to damage the citizens of Wayne County and the State of Michigan by charging exorbitant fees to attend the auctions and adding additional fees to the costs of any vehicle or equipment purchased.

21

186.   Worth noting, there is no federal, state or local statute, ordinance, policy or any other form of authorization that gives Defendant Wayne County the authority to regulate the auction services industry within the County of Wayne, and/or to displace competition for providing auction services within the County of Wayne.

187.   In addition, because Defendant Wayne County is a consumer of auctioning services, and because it generates revenue from the auctioning services that it procures, (just as any private consumer) Defendant Wayne County is a market participant in the market of auctioning services within the County of Wayne.

188.   Adding to it being a consumer, Defendant Wayne County actively participates in the auctioning of its vehicles, trucks and equipment.  For example, Wayne County in its auctioning services contracts specifically asserts control over the auction process, the auction bids and other facets of the auctions.

189.   Once Defendant Wayne County unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

190.   The above listed actions effectively constitute a restraint of trade against any competing auctioning services company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder—furthering the attempted monopoly.

191.   The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and to further B & T's attempted monopoly irrespective of whether or not B & T meets the minimum qualifications of the contracts.

192.   As a result of the attempted monopoly of auctioning services within the County of Wayne, the following antitrust injuries were suffered:

    a.  B & T's auctioning services competitors, including Plaintiff and the other competitors named herein, are being forced out of the auctioning services industry within the County of Wayne;

    b.  The consumers of the auctioning services, the governmental agencies, are receiving a lesser product in that Defendant B & T lacks the required experience and expertise to obtain the highest value for the auctioned vehicles, trucks and equipment.  As such, the revenue generated is greatly reduced.

    c.  The potential purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant fees, including gate fees, auction service fees and bidder registration fees, in order to attend the auctions.  Because competition has been

22

effectively restrained, potential purchasers have no alternative to paying these fees to attend auctions of vehicles, trucks and equipment.

d. The purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant auction fees including document fees, storage fees, gate fees, auction service fees and bidder registration fees.

e. Purchasers of auctioned vehicles, trucks and equipment have been deprived of free and open competition in the auction services industry within the County of Wayne.

f. Price competition between auction services providers has been restrained, suppressed, or eliminated because B & T, providing 75% of the auctioning services within the County of Wayne, is nearly the only auctioning services provider within the County of Wayne.

g. Pricing for providing auctioning services within the County of Wayne has dropped to below competitive levels because of B & T's winning, below average variable cost bids.

193.    The aforementioned anti-trust injuries flow from the anti-trust violations described herein.

194.    As a direct and proximate result of the aforesaid acts and activities of Defendant Wayne County and/or its agents, Plaintiff, as well as other competitors, has and will continue to suffer damage including substantial economic injury, lost profits, loss of reputation and loss of business opportunities, among others.

195.    Defendant Wayne County is liable or vicariously liable for all damages.

**COUNT VII**
**RESTRAINT OF**
**TRADE RESULTING IN**
**SHERMAN ACT, 15 USC §§ 1, ET. SEQ.,**
**AND CLAYTON ACT SECTION 12 VIOLATIONS AS**
**TO DEFENDANT METRO AUCTION SERVICES, INC.**

196.    Plaintiff hereby incorporates Paragraphs 1-195 by reference as if fully restated herein.

197.    Defendant MAS, during the relevant times of this lawsuit, was a subcontractor to Defendant B & T.

198.    As a subcontractor, Defendant MAS auctioned vehicles and equipment under the contract that was discussed herein.

199.    In addition to being a subcontractor, Defendant MAS was also an agent of Defendant B & T.

200.    Defendant MAS also conducts the auctions for B & T and the other Fiore owned companies for all vehicle, truck and equipment auctions held within the County of Wayne.

201.    Defendant MAS, the co-conspirators and the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to further Defendant B & T's attempted monopoly of the auction services industry within the County of Wayne.

202.    Specifically, Defendant MAS, by and through the actions of its officials, employees and/or agents, solicited the co-conspirators, including Defendant McNeal, and Wayne County to allow Defendant B & T to be awarded the Wayne County equipment auctioning contract, in spite of the fact that MAS and/or B & T did not meet the required qualifications—furthering B & T's attempted monopoly of auctioning services within the County of Wayne.

203.    In addition, Defendant MAS assisted B & T in submitting a below average variable cost bid in response to Wayne County's IFB 37-10-033.  Defendant MAS necessarily provided B & T a below average variable cost estimate to provide its services under the contract.  B & T used this below average variable cost estimate to assist it in calculating and submitting a below average variable cost bid in response to the IFB.

204.    The anti-competitive acts of Defendant MAS and all co-conspirators were intentionally directed to the end goal of monopolizing the auctioning services industry within the County of Wayne.

205.    Defendant MAS's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning services within the County of Wayne.

206.    Defendant MAS further restrained trade by aiding Defendant B & T in its effort to be the only auctioning services provider within the County of Wayne; and to damage the citizens of Wayne County and the State of Michigan by charging exorbitant fees to attend the auctions and adding additional fees to the costs of any vehicle or equipment purchased.

207.    Once Defendant MAS unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

208.    The above listed actions effectively constitute a restraint of trade against any competing auctioning services company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder—furthering the attempted monopoly.

24

209.    The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and to further B & T's attempted monopoly irrespective of whether or not B & T meets the minimum qualifications of the contracts.

210.    As a result of the attempted monopoly of auctioning services within the County of Wayne, the following antitrust injuries were suffered:

> a.  B & T's auctioning services competitors, including Plaintiff and the other competitors named herein, are being forced out of the auctioning services industry within the County of Wayne;
>
> b.  The consumers of the auctioning services, the governmental agencies, are receiving a lesser product in that Defendant B & T lacks the required experience and expertise to obtain the highest value for the auctioned vehicles, trucks and equipment.  As such, the revenue generated is greatly reduced.
>
> c.  The potential purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant fees, including gate fees, auction service fees and bidder registration fees, in order to attend the auctions.  Because competition has been effectively restrained, potential purchasers have no alternative to paying these fees to attend auctions of vehicles, trucks and equipment.
>
> d.  The purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant auction fees including document fees, storage fees, gate fees, auction service fees and bidder registration fees.
>
> e.  Purchasers of auctioned vehicles, trucks and equipment have been deprived of free and open competition in the auction services industry within the County of Wayne.
>
> f.  Price competition between auction services providers has been restrained, suppressed, or eliminated because B & T, providing 75% of the auctioning services within the County of Wayne, is nearly the only auctioning services provider within the County of Wayne.
>
> g.  Pricing for providing auctioning services within the County of Wayne has dropped to below competitive levels because of B & T's winning, below average variable cost bids.

211.    The aforementioned anti-trust injuries flow from the anti-trust violations described herein.

212.    As a direct and proximate result of the aforesaid acts and activities of Defendant MAS and/or its agents, Plaintiff, as well as other competitors, has and will continue to suffer damage including substantial economic injury, lost profits, loss of reputation and loss of business opportunities, among others.

25

213.     Defendant MAS is liable or vicariously liable for all damages.

## COUNT VIII
### UNFAIR TRADE
### PRACTICES RESULTING IN MICHIGAN
### ANTITRUST, MCL 445.771, ET. SEQ., VIOLATIONS
### AS TO DEFENDANT METRO AUCTION SERVICES, INC.

214.     Plaintiff hereby incorporates Paragraphs 1-213 by reference as if fully restated herein.

215.     Defendant MAS, during the relevant times of this lawsuit, was a subcontractor to Defendant B & T.

216.     As a subcontractor, Defendant MAS auctioned vehicles and equipment under the contract that is discussed herein.

217.     In addition to being a subcontractor, Defendant MAS was also an agent of Defendant B & T.

218.     Defendant Wayne County is a person as defined by MCL 445.771(1)(a).

219.     Defendant B & T is a person as defined by MCL 445.771(1)(a).

220.     Defendant MAS is a person as defined by MCL 445.771(1)(a).

221.     Defendant MAS, the co-conspirators and the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to further Defendant B & T's attempted monopoly of the auction services industry within the County of Wayne.

222.     Specifically, Defendant MAS, by and through the actions of its officials, employees and/or agents, solicited the co-conspirators, including Defendant McNeal, and Wayne County to allow Defendant B & T to be awarded the Wayne County equipment auctioning contract, in spite of the fact that MAS and/or B & T did not meet the required qualifications—furthering B & T's attempted monopoly of auctioning services within the County of Wayne.

223.     In addition, Defendant MAS assisted B & T in submitting a below average variable cost bid in response to Wayne County's IFB 37-10-033.  Defendant MAS necessarily provided B & T a below average variable cost estimate to provide its services under the contract.  B & T used this below average variable cost estimate to assist it in calculating and submitting a below average variable cost bid in response to the IFB.

224.     The anti-competitive acts of Defendant MAS and all co-conspirators were intentionally directed to the end goal of monopolizing the auctioning services industry within the County of Wayne.

26

225. Defendant MAS's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning services within the County of Wayne.

226. Defendant MAS further restrained trade by aiding Defendant B & T in its effort to be the only auctioning services provider within the County of Wayne; and to damage the citizens of Wayne County and the State of Michigan by charging exorbitant fees to attend the auctions and adding additional fees to the costs of any vehicle or equipment purchased.

227. Once Defendant MAS unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

228. The above listed actions effectively constitute a restraint of trade against any competing auctioning services company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder—furthering the attempted monopoly.

229. The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and to further B & T's attempted monopoly irrespective of whether or not B & T meets the minimum qualifications of the contracts.

230. As a result of the attempted monopoly of auctioning services within the County of Wayne, the following antitrust injuries were suffered:

   a. B & T's auctioning services competitors, including Plaintiff and the other competitors named herein, are being forced out of the auctioning services industry within the County of Wayne;

   b. The consumers of the auctioning services, the governmental agencies, are receiving a lesser product in that Defendant B & T lacks the required experience and expertise to obtain the highest value for the auctioned vehicles, trucks and equipment. As such, the revenue generated is greatly reduced.

   c. The potential purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant fees, including gate fees, auction service fees and bidder registration fees, in order to attend the auctions. Because competition has been effectively restrained, potential purchasers have no alternative to paying these fees to attend auctions of vehicles, trucks and equipment.

   d. The purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant auction fees including document fees, storage fees, gate fees, auction service fees and bidder registration fees.

    e.  Purchasers of auctioned vehicles, trucks and equipment have been deprived of free and open competition in the auction services industry within the County of Wayne.

    f.  Price competition between auction services providers has been restrained, suppressed, or eliminated because B & T, providing 75% of the auctioning services within the County of Wayne, is nearly the only auctioning services provider within the County of Wayne.

    g.  Pricing for providing auctioning services within the County of Wayne has dropped to below competitive levels because of B & T's winning, below average variable cost bids.

231.   The aforementioned anti-trust injuries flow from the anti-trust violations described herein.

232.   As a direct and proximate result of the aforesaid acts and activities of Defendant MAS and/or its agents, Plaintiff, as well as other competitors, has and will continue to suffer damage including substantial economic injury, lost profits, loss of reputation and loss of business opportunities, among others.

233.   Defendant MAS is liable or vicariously liable for all damages.

**COUNT IX**
**DEFENDANT METRO AUCTION**
**SERVICES, INC. ENGAGED IN PREDATORY PRICING**
**IN VIOLATION OF MICHIGAN AND FEDERAL ANTI-TRUST LAWS**

234.   Plaintiff hereby incorporates Paragraphs 1-233 by reference as if fully restated herein.

235.   Defendant MAS, in its engagement in predatory pricing, violated MCL 445.771, et. seq., the Sherman Act, 15 USC §§ 1, et. seq., and the Clayton Act section 12.

236.   Defendant MAS, during the relevant time of this lawsuit, was a subcontractor to Defendant B & T.

237.   As a subcontractor, Defendant MAS auctioned vehicles and equipment under the contract that is discussed herein.

238.   In addition to being a subcontractor, Defendant MAS was also an agent of Defendant B & T.

239.   Defendant MAS represented that it was willing to be a subcontractor for Defendant B & T for a below-average variable cost amount.

28

240.    Defendant MAS' below average variable cost representation was intended to assure that Defendant B & T would be the lowest bidder on the contract discussed herein.

241.    As such, Defendant MAS aided B & T in its attempt to drive its competitors in the auctioning services industry within the County of Wayne out of the auctioning business.

242.    Once Defendant MAS assisted B & T in providing a below average variable cost bid, and subsequently being awarded the auctioning contract, Defendant B & T became the only auctioning company providing the contracted auctioning services for Wayne County.

243.    Each contract that MAS and B & T bid on and were awarded with below average variable costs bids furthered its attempted monopoly of auctioning services within the County of Wayne.

244.    Moreover, Defendants MAS and B & T were not able to submit a below average cost bid because of any superior efficiency it possessed in providing auctioning services within the County of Wayne.

245.    Each below average variable cost bid was submitted with the intention of driving B & T's competitors out of the auctioning services market within the County of Wayne.

246.    Further, the costs associated with entering the auctioning services industry within the County of Wayne are astronomical.  As such, B & T is not being faced with new competitors as it drives out its old competitors.

247.    For example, before being able to enter into the auctioning services market within the County of Wayne, a new competitor would need to obtain the requisite bond to obtain a State of Michigan broker's license; obtain a broker's license; obtain all local auctioning licensing; and somehow keep the new business viable for the 3-5 years that Defendant B & T holds the auctioning contracts before having an opportunity to even attempt to obtain the auctioning services business within the County of Wayne.

248.    Recall, Defendant B & T currently performs about 75% of the auctioning services market within the County of Wayne.

249.    Any new business would have to survive off of a portion of the 25% that is left until B & T's many auctioning contracts come up for re-bid.

250.    Worth noting here, although Defendant B & T did not meet the requirements of the contract specifically discussed herein, it was still awarded the contract because of the collusion with Wayne County and the other co-conspirators.

251.    As such, having an opportunity to bid on the contract clearly does not afford a new competitor (or any other competitor) the opportunity to enter into the auctioning services market within the County of Wayne.

29

252.    As a result of Defendant MAS' anticompetitive conduct, the following antitrust injuries were suffered:

      a. B & T's auctioning services competitors, including Plaintiff and the other competitors named herein, are being forced out of the auctioning services industry within the County of Wayne;

      b. The consumers of the auctioning services, the governmental agencies, are receiving a lesser product in that Defendant B & T lacks the required experience and expertise to obtain the highest value for the auctioned vehicles, trucks and equipment.  As such, the revenue generated is greatly reduced.

      c. The potential purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant fees, including gate fees, auction service fees and bidder registration fees, in order to attend the auctions.  Because competition has been effectively restrained, potential purchasers have no alternative to paying these fees to attend auctions of vehicles, trucks and equipment.

      d. The purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant auction fees including document fees, storage fees, gate fees, auction service fees and bidder registration fees.

      e. Purchasers of auctioned vehicles, trucks and equipment have been deprived of free and open competition in the auction services industry within the County of Wayne.

      f. Price competition between auction services providers has been restrained, suppressed, or eliminated because B & T, providing 75% of the auctioning services within the County of Wayne, is nearly the only auctioning services provider within the County of Wayne.

      g. Pricing for providing auctioning services within the County of Wayne has dropped to below competitive levels because of B & T's winning, below average variable cost bids.

253.    The aforementioned anti-trust injuries flow from the anti-trust violations described herein.

254.    Once Defendants MAS and B & T drove its competitors out of the auction services industry within the County of Wayne, contract-by-contract, Defendants MAS and B & T raised its pricing and created new cost categories that it did not disclose in its varied bids in an effort to recoup its losses.

255.    Defendants MAS and B & T participated in a predatory pricing scheme with the intent of driving their competitors out of the auctioning services market within the County of Wayne; with

the intent of being the only auctioning services provider within the County of Wayne; and with the intent to have a destructive effect on its competitors and competition.

256.   As a direct and proximate result of the aforesaid acts and activities of Defendant MAS and/or its agents, Plaintiff, as well as other competitors, has and will continue to suffer damage including substantial economic injury, lost profits, loss of reputation and loss of business opportunities, among others.

257.   Defendant MAS is liable or vicariously liable for all damages.

## COUNT X
### TORTIOUS INTERFERENCE
### WITH AN ADVANTAGEOUS BUSINESS
### RELATIONSHIP OR EXPECTANCY AS TO
### DEFENDANT METRO AUCTION SERVICES, INC.

258.   Plaintiff hereby incorporates Paragraphs 1-257 by reference as if fully restated herein.

259.   Plaintiff and Defendant Wayne County had a valid business relationship and/or expectancy regarding providing auction services through IFB 37-10-033.

260.   Plaintiff was in a position to be awarded the contract as the lowest bidder under IFB 37-10-033 since Defendant B & T was disqualified as being an unresponsible/unresponsive bidder due to the 15-mile location requirement and its failure to meet the experience requirement.

261.   Defendant MAS, through its agents, was aware of the business relationship and/or expectancy between Plaintiff and Defendant Wayne County.

262.   Defendants MAS and B & T, through the acts of their agents, intentionally and improperly interfered with the advantageous business relationship and/or expectancy between Plaintiff and Defendant Wayne County, when they agreed, contracted and/or conspired to assure that Defendant B & T was winning bidder on IFB 37-10-033; regardless of whether or not they qualified for the contract, among other things discussed herein.

263.   Defendants MAS's and B & T's, through the acts of its agents, intentional interference caused a termination of the business relationship and/or expectancy between Plaintiff and Defendant Wayne County as to IFB 37-10-033.

264.   Defendants MAS and B & T's intentional interference included intentionally lowering its bid price to a below average variable cost price in order to be the successful bidder and intentionally providing a false address of where the auctions were to be held in order to sway Defendant Wayne County in awarding the bid to Defendants MAS and B & T, as well as soliciting Wayne County to ignore these deficiencies and award them the contract.

265.   As a result of its agent's actions, Defendant MAS is vicariously liable for any damages Plaintiff suffered and continues to suffer.

266.   As a result of Defendant MAS's tortious interference with Plaintiff's business relationship and/or expectancy, Plaintiff has suffered damages including, but not limited to reliance damages, lost income, lost earning capacity, loss of business opportunities, exemplary damages and loss of professional reputation.

## COUNT XI
## CIVIL CONSPIRACY AS TO
## DEFENDANT METRO AUCTION SERVICES, INC.

267.   Plaintiff hereby incorporates Paragraphs 1-266 by reference as if fully restated herein.

268.   Defendant MAS and the other named Defendants herein illegally, maliciously and wrongfully conspired with one another to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means.

269.   Defendant MAS conspired to tortiously interfere with an advantageous business relationship and/or expectancy; to rig a bid; to fix prices; and to restrain trade when it made a below-average variable cost representation of the costs to fulfill contract discussed herein, while knowing that the representation would help B & T's bid to be the lowest, among other things described herein.

270.   As a result of Defendant MAS's acts and conspiracy with the other Defendants herein, Defendant MAS caused and continues to cause Plaintiff damages including, but not limited to, reliance damages, lost income, lost earning capacity, loss of business opportunities, exemplary damages and loss of professional reputation.

## COUNT XII
## RESTRAINT OF TRADE
## RESULTING IN SHERMAN ACT, 15 USC §§ 1,
## ET. SEQ., AND CLAYTON ACT SECTION 12 VIOLATIONS
## AS TO DEFENDANT BOULEVARD & TRUMBULL TOWING, INC.

271.   Plaintiff hereby incorporates Paragraphs 1-270 by reference as if fully restated herein.

272.   Defendant B & T, the co-conspirators and the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to further Defendant B & T's attempted monopoly of the auction services industry within the County of Wayne.

273.   Specifically, Defendant B & T, by and through the actions of its officials, employees and/or agents, solicited the co-conspirators, including Defendant McNeal, and Wayne County to allow Defendant B & T to be awarded the Wayne County equipment auctioning contract, in spite of the fact that B & T did not meet the required qualifications—furthering B & T's attempted monopoly of auctioning services within the County of Wayne.

274.   In addition, Defendant B & T submitted a below average variable cost bid in response to Wayne County's IFB 37-10-033.  After winning the bid, B & T took efforts to recoup the losses the below average variable cost bid created.

275.   In recouping its losses, B & T acted in a manner that created detriment to both Wayne County and to the consumers of the auctioned vehicles, trucks and equipment.  Less potential purchasers attended the auctions because of the exorbitant fees being charged in order to attend; and the purchasers were charged excessive fees when making purchases.

276.   Further, Wayne County generated less revenue because of the inexperience of Defendant B & T and the lower numbers of attendees at the auctions.

277.   The anti-competitive acts of Defendant B & T and all co-conspirators were intentionally directed to the end goal of monopolizing the auctioning services industry within the County of Wayne.

278.   Defendant B & T's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning services within the County of Wayne.

279.   As described herein, Defendant B & T took steps to assure that it was the only auctioning services provider within the County of Wayne; and to damage the citizens of Wayne County, the State of Michigan, and other states by charging exorbitant fees to attend the auctions and adding additional fees to the costs of any vehicle or equipment purchased.

280.   Once Defendant B & T unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

281.   The above listed actions effectively constitute a restraint of trade against any competing auctioning services company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder—furthering the attempted monopoly.

282.   The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and to further B & T's attempted monopoly irrespective of whether or not B & T meets the minimum qualifications of the contracts.

283.   As a result of the attempted monopoly of auctioning services within the County of Wayne, the following antitrust injuries were suffered:

   a.  B & T's auctioning services competitors, including Plaintiff and the other competitors named herein, are being forced out of the auctioning services industry within the County of Wayne;

33

b. The consumers of the auctioning services, the governmental agencies, are receiving a lesser product in that Defendant B & T lacks the required experience and expertise to obtain the highest value for the auctioned vehicles, trucks and equipment. As such, the revenue generated is greatly reduced.

c. The potential purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant fees, including gate fees, auction service fees and bidder registration fees, in order to attend the auctions. Because competition has been effectively restrained, potential purchasers have no alternative to paying these fees to attend auctions of vehicles, trucks and equipment.

d. The purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant auction fees including document fees, storage fees, gate fees, auction service fees and bidder registration fees.

e. Purchasers of auctioned vehicles, trucks and equipment have been deprived of free and open competition in the auction services industry within the County of Wayne.

f. Price competition between auction services providers has been restrained, suppressed, or eliminated because B & T, providing 75% of the auctioning services within the County of Wayne, is nearly the only auctioning services provider within the County of Wayne.

g. Pricing for providing auctioning services within the County of Wayne has dropped to below competitive levels because of B & T's winning, below average variable cost bids.

284. The aforementioned anti-trust injuries flow from the anti-trust violations described herein.

285. As a direct and proximate result of the aforesaid acts and activities of Defendant B & T and/or its agents, Plaintiff, as well as other competitors, has and will continue to suffer damage including substantial economic injury, lost profits, loss of reputation and loss of business opportunities, among others.

286. Defendant B & T is liable or vicariously liable for all damages.

**COUNT XIII**
**UNFAIR TRADE**
**PRACTICES RESULTING IN MICHIGAN**
**ANTITRUST, MCL 445.771, ET. SEQ., VIOLATIONS**
**AS TO DEFENDANT BOULEVARD AND TRUMBULL TOWING, INC.**

287. Plaintiff hereby incorporates Paragraphs 1-286 by reference as if fully restated herein.

288.    Defendant Wayne County is a person as defined by MCL 445.771(1)(a).

289.    Defendant B & T is a person as defined by MCL 445.771(1)(a).

290.    Defendant MAS is a person as defined by MCL 445.771(1)(a).

291.    Defendant B & T, the co-conspirators and the other named Defendants herein unlawfully contracted, combined and/or conspired among each other to further Defendant B & T's attempted monopoly of the auction services industry within the County of Wayne.

292.    Specifically, Defendant B & T, by and through the actions of its officials, employees and/or agents, solicited the co-conspirators, including Defendant McNeal, and Wayne County to allow Defendant B & T to be awarded the Wayne County equipment auctioning contract, in spite of the fact that B & T did not meet the required qualifications—furthering B & T's attempted monopoly of auctioning services within the County of Wayne.

293.    In addition, Defendant B & T submitted a below average variable cost bid in response to Wayne County's IFB 37-10-033.  After winning the bid, B & T took efforts to recoup the losses the below average variable cost bid created.

294.    In recouping its losses, B & T acted in a manner that created detriment to both Wayne County and to the consumers of the auctioned vehicles, trucks and equipment.  Less potential purchasers attended the auctions because of the exorbitant fees being charged in order to attend; and the purchasers were charged excessive fees when making purchases.

295.    Further, Wayne County generated less revenue because of the inexperience of Defendant B & T and the lower numbers of attendees at the auctions.

296.    The anti-competitive acts of Defendant B & T and all co-conspirators were intentionally directed to the end goal of monopolizing the auctioning services industry within the County of Wayne.

297.    Defendant B & T's actions as described resulted in a restraint of trade, and evidenced an effort to monopolize trade or commerce in the relevant market of auctioning services within the County of Wayne.

298.    As described herein, Defendant B & T took steps to assure that it was the only auctioning services provider within the County of Wayne; and to damage the citizens of Wayne County and the State of Michigan by charging exorbitant fees to attend the auctions and adding additional fees to the costs of any vehicle or equipment purchased.

299.    Once Defendant B & T unlawfully contracted, combined and/or conspired with the other named Defendants, the other bidders, including Plaintiff and Martin's Towing were eliminated and prevented from having an opportunity to provide such auctioning services to Wayne County.

300.    The above listed actions effectively constitute a restraint of trade against any competing auctioning services company with whom Defendant B & T conducts business, as Defendant B & T will obviously be awarded Wayne County contracts regardless of whether or not they are the most responsive and responsible bidder—furthering the attempted monopoly.

301.    The awarding of Wayne County contracts to Defendant B & T is designed to eliminate or destroy any competitors and to further B & T's attempted monopoly irrespective of whether or not B & T meets the minimum qualifications of the contracts.

302.    As a result of the attempted monopoly of auctioning services within the County of Wayne, the following antitrust injuries were suffered:

a.      B & T's auctioning services competitors, including Plaintiff and the other competitors named herein, are being forced out of the auctioning services industry within the County of Wayne;

b.      The consumers of the auctioning services, the governmental agencies, are receiving a lesser product in that Defendant B & T lacks the required experience and expertise to obtain the highest value for the auctioned vehicles, trucks and equipment.  As such, the revenue generated is greatly reduced.

c.      The potential purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant fees, including gate fees, auction service fees and bidder registration fees, in order to attend the auctions.  Because competition has been effectively restrained, potential purchasers have no alternative to paying these fees to attend auctions of vehicles, trucks and equipment.

d.      The purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant auction fees including document fees, storage fees, gate fees, auction service fees and bidder registration fees.

e.      Purchasers of auctioned vehicles, trucks and equipment have been deprived of free and open competition in the auction services industry within the County of Wayne.

f.      Price competition between auction services providers has been restrained, suppressed, or eliminated because B & T, providing 75% of the auctioning services within the County of Wayne, is nearly the only auctioning services provider within the County of Wayne.

g.      Pricing for providing auctioning services within the County of Wayne has dropped to below competitive levels because of B & T's winning, below average variable cost bids.

303.    The aforementioned anti-trust injuries flow from the anti-trust violations described herein.

36

304.     As a direct and proximate result of the aforesaid acts and activities of Defendant B & T and/or its agents, Plaintiff, as well as other competitors, has and will continue to suffer damage including substantial economic injury, lost profits, loss of reputation and loss of business opportunities, among others.

305.     Defendant B & T is liable or vicariously liable for all damages.

## COUNT XIV
## DEFENDANT BOULEVARD AND
## TRUMBULL TOWING, INC. ENGAGED IN PREDATORY
## PRICING IN VIOLATION OF MICHIGAN AND FEDERAL ANTI-TRUST LAWS

306.     Plaintiff hereby incorporates Paragraphs 1-305 by reference as if fully restated herein.

307.     Defendant B & T, in its engagement in predatory pricing, violated MCL 445.771, et. seq., the Sherman Act, 15 USC §§ 1, et. seq., and the Clayton Act section 12.

308.     Defendant B & T bid a below-average variable cost amount for IFB 37-10-033, among other contracts.

309.     In providing below average variable costs bids, B & T was awarded auctioning contracts; and as such became the only auctioning company providing the contracted auctioning services for Wayne Count, as well as others.

310.     Each contract that B & T bid on and was awarded with below average variable costs bids furthered its attempted monopoly of auctioning services within the County of Wayne.

311.     Moreover, Defendant B & T was not able to submit a below average cost bid because of any superior efficiency it possessed in providing auctioning services within the County of Wayne.

312.     Each below average variable cost bid was submitted with the intention of driving B & T's competitors out of the auctioning services market within the County of Wayne.

313.     Further, the costs associated with entering the auctioning services industry within the County of Wayne are astronomical.  As such, B & T is not being faced with new competitors as it drives out its old competitors.

314.     For example, before being able to enter into the auctioning services market within the County of Wayne, a new competitor would need to obtain the requisite bond to obtain a State of Michigan broker's license; obtain a broker's license; obtain all local auctioning licensing; and somehow keep the new business viable for the 3-5 years that Defendant B & T holds the auctioning contracts before having an opportunity to even attempt to obtain the auctioning services business within the County of Wayne.

315.    Recall, Defendant B & T currently performs about 75% of the auctioning services market within the County of Wayne.

316.    Any new business would have to survive off of a portion of the 25% that is left until B & T's many contracts come up for re-bid.

317.    Worth noting here, although Defendant B & T did not meet the requirements of the contract specifically discussed herein, it was still awarded the contract because of the collusion with Wayne County and the other co-conspirators.

318.    As such, having an opportunity to bid on the contract clearly does not afford a new competitor (or any other competitor) the opportunity to enter into the auctioning services market within the County of Wayne.

319.    As a result of Defendant B & T's anticompetitive conduct, the following antitrust injuries were suffered:

    a.  B & T's auctioning services competitors, including Plaintiff and the other competitors named herein, are being forced out of the auctioning services industry within the County of Wayne;

    b.  The consumers of the auctioning services, the governmental agencies, are receiving a lesser product in that Defendant B & T lacks the required experience and expertise to obtain the highest value for the auctioned vehicles, trucks and equipment.  As such, the revenue generated is greatly reduced.

    c.  The potential purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant fees, including gate fees, auction service fees and bidder registration fees, in order to attend the auctions.  Because competition has been effectively restrained, potential purchasers have no alternative to paying these fees to attend auctions of vehicles, trucks and equipment.

    d.  The purchasers of the auctioned vehicles, trucks and equipment are forced to pay exorbitant auction fees including document fees, storage fees, gate fees, auction service fees and bidder registration fees.

    e.  Purchasers of auctioned vehicles, trucks and equipment have been deprived of free and open competition in the auction services industry within the County of Wayne.

    f.  Price competition between auction services providers has been restrained, suppressed, or eliminated because B & T, providing 75% of the auctioning services within the County of Wayne, is nearly the only auctioning services provider within the County of Wayne.

38

g.  Pricing for providing auctioning services within the County of Wayne has dropped to below competitive levels because of B & T's winning, below average variable cost bids.

320.   The aforementioned anti-trust injuries flow from the anti-trust violations described herein.

321.   Once Defendants MAS and B & T drove its competitors out of the auction services industry within the County of Wayne, contract-by-contract, Defendants MAS and B & T raised its pricing and created new cost categories that it did not disclose in its varied bids in an effort to recoup its losses.

322.   Defendants B & T participated in a predatory pricing scheme with the intent of driving their competitors out of the auctioning services market within the County of Wayne; with the intent of being the only auctioning services provider within the County of Wayne; and with the intent to have a destructive effect on its competitors and competition.

323.   As a direct and proximate result of the aforesaid acts and activities of Defendant B & T and/or its agents, Plaintiff, as well as other competitors, has and will continue to suffer damage including substantial economic injury, lost profits, loss of reputation and loss of business opportunities, among others.

324.   Defendant B & T is liable or vicariously liable for all damages.


## COUNT XV
## TORTIOUS INTERFERENCE
## WITH AN ADVANTAGEOUS BUSINESS
## RELATIONSHIP OR EXPECTANCY AS TO
## DEFENDANT BOULEVARD AND TRUMBULL TOWING, INC.

325.   Plaintiff hereby incorporates Paragraphs 1-331 by reference as if fully restated herein.

326.   Plaintiff and Defendant Wayne County had a valid business relationship and/or expectancy regarding providing auction services through IFB 37-10-033.

327.   Plaintiff was in a position to be awarded the contract as the lowest bidder under IFB 37-10-033 since Defendant B & T was disqualified as being an unresponsible/unresponsive bidder due to the 15-mile location requirement and its failure to meet the experience requirement.

328.   Defendant B & T, through its agents, was aware of the business relationship and/or expectancy between Plaintiff and Defendant Wayne County.

329.   Defendants MAS and B & T, through the acts of their agents, intentionally and improperly interfered with the advantageous business relationship and/or expectancy between Plaintiff and Defendant Wayne County, when they agreed, contracted and/or conspired to assure

39

that Defendant B & T was winning bidder on IFB 37-10-033; regardless of whether or not they qualified for the contract.

330.    Defendants MAS and B & T, through the acts of its agents, intentional interference caused a termination of the business relationship and/or expectancy between Plaintiff and Defendant Wayne County.

331.    Defendants MAS and B & T's intentional interference included intentionally lowering its bid price to a below average variable cost price in order to be the successful bidder and intentionally providing a false address of where the auctions were to be held in order to sway Defendant Wayne County in awarding the bid to Defendants MAS and B & T, as well as soliciting Wayne County to ignore these deficiencies and award them the contract, among other things described herein.

332.    As a result of its agent's actions, Defendant B & T is vicariously liable for any damages Plaintiff suffered and continues to suffer.

333.    As a result of Defendant B & T's tortious interference with Plaintiff's business relationship and/or expectancy, Plaintiff has suffered damages including, but not limited to, reliance damages, lost income, lost earning capacity, loss of business opportunities, exemplary damages and loss of professional reputation.

## COUNT XVI
## CIVIL CONSPIRACY AS TO
## DEFENDANT BOULEVARD AND TRUMBULL TOWING, INC.

334.    Plaintiff hereby incorporates Paragraphs 1-340 by reference as if fully restated herein.

335.    Defendant B & T and the other named Defendants herein illegally, maliciously and wrongfully conspired with one another to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means.

336.    Defendant B & T conspired to tortiously interfere with an advantageous business relationship and/or expectancy; to rig a bid; to fix prices; and to restrain trade when it agreed with the other named Defendants to ignore Defendant B & T's obvious deficiencies; and to alter the calculation of Plaintiff's bid to assure that Defendant B & T was the lowest responsive bidder, among other things described herein.

337.    As a result of Defendant B & T's acts and conspiracy with the other Defendants herein, Defendant B & T caused and continues to cause Plaintiff damages including, but not limited to reliance damages, lost income, lost earning capacity, loss of business opportunities, exemplary damages and loss of professional reputation.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against

Defendants for the following relief:

a.      Reliance damages in an amount determined by this Court;

b.      Lost income in an amount determined by this Court;

c.      Lost profits in an amount determined by this Court;

d.      Exemplary damages in an amount determined by this Court;

e.      Injunction stopping Defendants MAS and B & T from continuing to service the contract discussed herein, until properly and legally bided.

f.      Any other relief as the Court deems warranted.


Respectfully submitted,


I.A.B. Attorneys At Law, PLLC


By:   _/s/ Felicia Duncan Brock_____
         Felicia Duncan Brock (P63352)
         3319 Greenfield Road, #458
         Dearborn, MI  48120-1212
         (313) 318-3180
         duncan@iabattorneys.com

Dated:  January 10, 2012

**JURY DEMAND**

Plaintiff demands a jury trial.

Respectfully submitted,

I.A.B. Attorneys At Law, PLLC

By:  _/s/ Felicia Duncan Brock_____
      Felicia Duncan Brock (P63352)
      3319 Greenfield Road, #458
      Dearborn, MI  48120-1212
      (313) 318-3180
      duncan@iabattorneys.com

Dated:  January 10, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Marc A. Deldin, Esquire, L. Pahl Zinn, Esquire, and Aaron C. Thomas, Esquire; and I hereby certify that I have mailed by United States Postal Service the document to the following non ECF participants:  n/a.

Respectfully,

I.A.B. Attorneys At Law, PLLC

By:  ___/s/ Felicia Duncan Brock_____
      *Attorneys for Plaintiff*
      3319 Greenfield Road, #458
      Dearborn, Michigan 48120
      (313) 318-3180
